# UNITED STATES DISTRICT COURT
# DISTRICT OF VERMONT

MOHSEN MAHDAWI,

                 Petitioner,

    -against-

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS
PRESIDENT OF THE UNITED STATES; PATRICIA HYDE, IN
HER OFFICIAL CAPACITY AS ACTING BOSTON FIELD
OFFICE DIRECTOR, IMMIGRATION AND CUSTOMS
ENFORCEMENT, ENFORCEMENT AND REMOVAL
OPERATIONS; VERMONT SUB-OFFICE DIRECTOR OF
IMMIGRATION AND CUSTOMS ENFORCEMENT,
ENFORCEMENT AND REMOVAL OPERATIONS; TODD M.
LYONS, IN HIS OFFICIAL CAPACITY AS ACTING
DIRECTOR, U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT; KRISTI NOEM, IN HER OFFICIAL
CAPACITY AS SECRETARY OF THE UNITED STATES
DEPARTMENT OF HOMELAND SECURITY; MARCO
RUBIO, IN HIS OFFICIAL CAPACITY AS SECRETARY OF
STATE; AND PAMELA BONDI, IN HER OFFICIAL
CAPACITY AS U.S. ATTORNEY GENERAL,

                 Respondents.

**PETITION FOR
WRIT OF HABEAS
CORPUS**

## INTRODUCTION

1.      Petitioner Mohsen Mahdawi is a lawful permanent resident of the United States on

the pathway to naturalization. He has held a green card for the past ten years. This case concerns

the government's retaliatory and targeted detention and attempted removal of Mr. Mahdawi for his

constitutionally protected speech.

2.      Mr. Mahdawi was born and raised in a refugee camp in the West Bank, where he

lived until he moved to the United States in 2014. Mr. Mahdawi recently attended Columbia

University, and he intends to return for a master's degree in fall of 2025. As a student at Columbia,

Mr. Mahdawi was an outspoken critic of Israel's military campaign in Gaza and an activist and organizer in student protests on Columbia's campus until March of 2024, after which he took a step back and has not been involved in organizing.

3.    On April 14, 2025, Mr. Mahdawi was arrested and detained by agents from the Department of Homeland Security ("DHS"), despite the fact that he is a lawful permanent resident.

4.    Mr. Mahdawi's unlawful arrest and detention comes after Respondents adopted a policy ("the Policy") on or before March 8, 2025, to retaliate and punish noncitizens for their speech and expressive conduct related to Palestine and Israel. Under the Policy, Respondent Marco Rubio, the Secretary of State, has unilateral power to issue determinations ("Rubio Determinations") that the presence or activities in the United States of individuals who protested or were outspoken critics of Israel would have potentially serious foreign policy consequences and would compromise a compelling United States foreign policy interest. Based on these determinations, the Department of Homeland Security would seek to detain and deport these individuals.

5.    It appears that Respondents seek to base Mr. Mahdawi's removal on the Rubio Determination and Section 237(a)(4)(C)(i) of the Immigration and Nationality Act, a rarely-used provision that Respondents recently used to detain another lawful permanent resident, Mahmoud Khalil, for similar speech.

6.    Prior to and following Mr. Mahdawi's detention, the government has made clear that it intends to retaliate and punish individuals such as Mr. Mahdawi who advocated for ceasefire and ending the bloodshed in Gaza. Respondents' actions plainly violate the First Amendment, which protects Mr. Mahdawi's right to speak on matters of public concern and prevents the government from chilling constitutionally-protected speech.

7.    In addition to violating Mr. Mahdawi's First Amendment rights, the Rubio Determination and Mr. Mahdawi's unlawful detention also violates Mr. Mahdawi's statutory rights and due process rights.

**PARTIES**

8.    Petitioner Mohsen Mahdawi is a Palestinian who was born and raised in a refugee camp in the West Bank. He is a lawful permanent resident of the United States and has been for the last ten years. He is a recent student of Columbia University, with an expected graduation date of May 2025.  He has been admitted to a Master's program at Columbia University's School of International and Public Affairs ("SIPA"), to begin in the fall of 2025.

9.    Respondent Donald J. Trump is named in his official capacity as the President of the United States. In this capacity, he is responsible for the policies and actions of the executive branch, including the Department of State and the Department of Homeland Security. At all relevant hereto, Respondent Trump's address is the White House, 1600 Pennsylvania Ave. NW, Washington, D.C. 20500.

10.    Respondent Patricia Hyde is named in her official capacity as the Acting Field Office Director of the Boston Field Office for Immigration and Customs Enforcement ("ICE") within the United States Department of Homeland Security. In this capacity, she is responsible for the administration of immigration laws and the execution of detention and removal determinations and is a custodian of Petitioner. At all times relevant hereto, Respondent Hyde's address is Boston ICE Enforcement and Removal Operations Field Office, 1000 District Avenue, Burlington, MA 01803.

11.    Respondent the Director of the Vermont Sub-Office of ICE Enforcement and Removal Operations, whose name is currently unknown to the undersigned, is named in his or her official capacity as the Director of the Vermont Sub-Office of the Boston Field Office for

Immigration and Customs Enforcement ("ICE") within the United States Department of Homeland Security. In this capacity, she is responsible for the administration of immigration laws and the execution of detention and removal determinations and is a custodian of Petitioner. At all relevant times, the Director's address is 64 Gricebrook Road, St. Albans, VT 05478.

14. Respondent Todd M. Lyons is named in his official capacity as the Acting Director of ICE. He administers and enforces the immigration laws of the United States, routinely conducts business in the District of Vermont, is legally responsible for pursuing efforts to remove the Petitioner, and as such is the custodian of the Petitioner. At all times relevant hereto, Respondent Lyons's address is ICE, Office of the Principal Legal Advisor, 500 12th St. SW, Mail Stop 5900, Washington DC 20536-5900.

13. Respondent Kristi Noem is named in her official capacity as the Secretary of Homeland Security in the United States Department of Homeland Security. In this capacity, she is responsible for the administration of immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(a) (2007); routinely transacts business in the District of Vermont; is legally responsible for pursuing any effort to detain and remove the Petitioner; and as such is a custodian of the Petitioner. At all times relevant hereto, Respondent Noem's address is U.S. Department of Homeland Security, Office of the General Counsel, 2707 Martin Luther King Jr. Ave. SE, Washington, DC 20528-0485.

14. Respondent Pamela Bondi is named in her official capacity as the Attorney General of the United States. She routinely transacts business in the District of Vermont in this capacity; is responsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(g) (2007); and as such is a custodian of the Petitioner. At all times relevant hereto,

Respondent Bondi's address is U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530- 0001.

## JURISDICTION & VENUE

15.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2241, Article I, §9, cl. 2 (the Suspension Clause) and Article III of the U.S. Constitution, the Administrative Procedure Act, 5 U.S.C. § 701 et seq.; and 28 U.S.C. § 2201 (Declaratory Judgement).

16.    An actual and justiciable controversy exists between the parties under 28 U.S.C. § 2201 and this Court has authority to grant declaratory and injunctive relief. *Id.* § 2201, 22023. The Court has additional remedial authority under the All Writs Act, 28 U.S.C. § 1651.

17.    Venue is proper in the District of Vermont under 28 U.S.C. § 2241 and 28 U.S.C. § 1391. At the time this proceeding was initiated, Mr. Mahdawi was detained at 463 Mountain View Drive, Colchester, VT 05446. The petitioner has been and is presently being detained at the direction of Respondent Hyde and/or the Vermont sub-office Director, and a substantial part of the events giving rise to this petition occurred within this district.

## FACTS

### *Background on Mr. Mahdawi*

18.    Mr. Mahdawi is Palestinian. He is also a lawful permanent resident of the United States, and has been for the last ten years.

19.    Mr. Mahdawi was born in a refugee camp in the West Bank.  In 2015, he became a lawful permanent resident of the United States.

20.    In 2018, Mr. Mahdawi enrolled in Lehigh University in Pennsylvania, where he studied computer science for two years before transferring into Columbia University in 2021 to study philosophy. Mr. Mahdawi completed his program at Columbia in 2024 and has an expected

graduation date of May 2025. Mr. Mahdawi plans to begin a Master's of International Affairs in fall of 2025 at the Columbia School of International and Public Affairs.

***Mr. Mahdawi's Speech on Matters of Public Concern***

21.     After growing up in a refugee camp,  Mr. Mahdawi felt compelled to advocate for Palestinian human rights upon moving to the United States.

22.     Mr. Mahdawi is also a committed Buddhist and believes in non-violence and empathy as a central tenet of his religion. In fall of 2021, he became the president of the Columbia University Buddhist Association and led it for two years.

23.     In fall of 2023, Mr. Mahdawi co-founded the Palestinian Student Union ("Dar") at Columbia University which "serves to engage with and celebrate Palestinian culture, history, and identity." Mr. Mahdawi co-founded this organization with Mahmoud Khalil, a Palestinian lawful permanent resident who was also recently detained by ICE for his expressive conduct related to Palestine.

24.     Before October of 2023, Mr. Mahdawi had advocated for a peaceful resolution between Israelis and Palestinians in different forms such as public speeches, community engagement, and storytelling initiatives. Following October of 2023, Mr. Mahdawi attended protests opposing military escalations in the region and advocating for Palestinian human rights and a peaceful political solution. Mr. Mahdawi gave speeches at several of these protests. In his speeches, Mr. Mahdawi advocated for Palestinian human rights, a permanent ceasefire, and a peaceful resolution that affirmed the human dignity of all.

25.     During one protest, Mr. Mahdawi vocally denounced an unaffiliated passerby who made an antisemitic comment, chanting "shame on him". Mr. Mahdawi stated that "we are against

antisemitism because antisemitism is a form of injustice, and injustice anywhere is a threat to justice everywhere." The confrontation was documented by the Columbia Spectator.[1]

26.    Mr. Mahdawi appeared in numerous televised interviews and print news articles regarding the military campaign in Gaza and related protests. In December of 2023, Mr. Mahdawi appeared on 60 Minutes where he shared that, as a child, he watched an Israeli soldier shoot and kill his best friend in the West Bank.

27.    Throughout his time as a student and a leader of Dar and the Columbia University Buddhist Association, Mr. Mahdawi was always willing to engage in dialogue with people whose views and beliefs differed from his own. Mr. Mahdawi believed, and continues to believe, that more speech is the solution to disagreement, rather than less, and that empathy and understanding through communication are a way to resolve conflicts peacefully.

28.    By the end of 2023, student speech and protests relating to the military campaign in Gaza had pushed Columbia into the national spotlight. And Mr. Mahdawi became a prime target for groups and individuals who wanted to suppress this flurry of activism.

29.    Mr. Mahdawi's speech regarding Israel's military campaign in Gaza, human rights, international law, obligations arising from international law, and related matters is speech protected by the First Amendment. Indeed, this political speech lies at the core of the First Amendment.

30.    Mr. Mahdawi's family still resides in a refugee camp in the West Bank. Israeli authorities have repeatedly harassed, detained, and tortured Mr. Mahdawi's family because of his advocacy for Palestinians in the United States.

---

[1] https://www.columbiaspectator.com/news/2023/11/10/hundreds-of-pro-palestinian-students-walk-out-as-part-of-national-call-to-action-gather-for-peaceful-protest-art-installation

31.    Mr. Mahdawi is fearful that, if he loses his lawful permanent resident status and he is removed to the West Bank, he will experience the same harassment, detention, and torture that his family has experienced, and would be in even more danger in light of the campaigns that have targeted and spread lies about him.

***The Federal Government's Suppression of Constitutionally Protected Speech: The Palestine Exception***

32.    In a closed-door meeting with donors during his re-election campaign, President Trump explicitly stated his intent to deport students who protested the military campaign in Gaza. Speaking in reference to Palestine-related protests, President Trump told donors: "Any student that protests, I throw them out of the country. You know, there are a lot of foreign students. As soon as they hear that, they're going to have to behave."[2]

33.    As a candidate, President Trump additionally pledged to "terminate the visas of all those Hamas sympathizers, and we'll get them off our college campuses, out of our cities, and get them the hell out of our country."[3]

34.    In fall of 2023, then-Senator Marco Rubio repeated these sentiments, stating on social media that "people marching at universities" were "supporters of Hamas" and that the U.S. should "cancel the visa of every foreign national out there supporting Hamas and get them out of America."[4]

35.    In January of 2025, after assuming office, President Trump signed two executive orders intended to fulfill his campaign promises of deporting protestors, Executive Order 14161, "Protecting the United States from Foreign Terrorists and other National Security and Public

---

[2] https://www.washingtonpost.com/politics/2024/05/27/trump-israel-gaza-policy-donors/.
[3] https://www.reuters.com/world/us/trump-administration-cancel-student-visas-all-hamas-sympathizers-white-house-2025-01-29/ .
[4] https://x.com/marcorubio/status/1713652113098539120.

Safety Threats," signed on January 20, 2025, and Executive Order 14188, titled "Additional Measures to Combat Anti-Semitism," signed on January 29, 2025.

36.    Executive Order 14161 states that its purpose is to "protect [United States] citizens" from aliens who "espouse hateful ideology" and "bear hostile attitudes towards [United States] citizens, culture, government, institutions, or founding principles." The order does not define "hostile attitudes," leaving the term open to encompass any form of political dissent or criticism of government policies.

37.    Executive Order 14188 and its accompanying fact sheet states the government's intent to target post-October 7, 2023 campus antisemitism, particularly on "leftist, anti-American colleges and universities." The order's definition of antisemitism encompasses constitutionally protected criticism of the Israeli government and its policies. The fact sheet frames the order as a promise to "deport Hamas sympathizers and revoke student visas," in order to send a message to all "resident aliens who participated in pro-jihadist protests" that the federal government "will find you…and deport you."

38.    Following the passage of these executive orders, prominent groups opposing Palestinian rights began publicly sharing the names of outspoken individuals whom they believed were non-citizens and wanted the government to deport. These groups explicitly singled out these individuals for their Palestine advocacy. Upon information and belief, these groups submitted these names to ICE's tip line.

39.    Betar USA—a group revived in 2024 which describes itself as "loud, proud, aggressive, and unapologetically Zionist"[5]—has publicly stated that it had "already submitted

_____

[5] https://betarus.org/

9

names of hundreds of terror supporters to the Trump administration."[6] On its website, Betar advocates for "military preparedness" in supporting Israel and "demands that its members understand force and weapons."[7]

40.    Betar USA's first target was lawful permanent resident Mahmoud Khalil. On January 29, 2025, the organization posted on social media that ICE is "aware of his home address and whereabouts" and confirmed that they "have provided his information to multiple contacts."[8]

41.    The following day, on January 30, 2025, Betar posted on X that "visa holder Mohsen Mahdawi is on our deport list."[9]

42.    On March 8, Mahmoud Khalil was returning from a Ramadan dinner when he was detained by DHS agents. Although the agents initially stated that they were revoking Mr. Khalil's "visa," upon learning that Mr. Khalil was a green-card holder, they stated that they would be revoking that too.[10]

43.    Following Mr. Khalil's arrest, President Trump issued a statement on Truth Social touting Mr. Khalil's arrest as a blueprint for future government actions. President Trump warned that Mr. Khalil's arrest was "the first of many to come," and stated that his administration would not tolerate "students at Columbia and other universities across the country who have engaged in

---

[6] Nicholas Liu, *A pro-Israel group says it gave the Trump administration a list of students to deport*, Salon.com (Jan. 31, 2025), *available at* https://www.salon.com/2025/01/31/pledged-to-deport-pro-palestine--and-a-pro-israel-group-has-already-made-a-list/.
[7] https://betarus.org/about/oath/.
[8] https://x.com/Betar_USA/status/1884796686020550930
[9] https://x.com/Betar_USA/status/1885077865684754439
[10] Amended Petition for Writ of Habeas Corpus, Case 1:25-cv-01935, Dkt. 38 at 2-3 (March 13, 2025).

pro-terrorist, anti-Semitic, anti-American activity." [11] The President promised to "find, apprehend, and deport these terrorist sympathizers from our country." [12]

44.     On social media site X, Secretary of State Marco Rubio wrote that the Trump administration "will be revoking the visas and/or green cards of Hamas supporters in America so they can be deported." [13]

45.     Following these statements, the Department of Homeland Security confirmed that Mr. Khalil's arrest by ICE was carried out "in support of President Trump's executive order's prohibiting anti-semitism, and in coordination with the Department of State."[14]

46.     The federal government based its detention of Mr. Khalil on the Secretary of State's claim that he posed a "threat to the foreign policy and national security interests of the United States."[15] In his Notice to Appear ("NTA"), the government cited Section 237(a)(3)(C)(i) of the Immigration and Nationality Act, stating that "the Secretary of State has reasonable ground to believe that [Mr. Khalil's] presence or activities in the United States would have potentially serious adverse foreign policy consequences for the United States." [16]

47.     In a statement to the Free Press on March 10, a White House Official stated that the federal government would use its basis for targeting Mr. Khalil as a "blueprint" for investigations against other students.[17]

---

[11] https://truthsocial.com/@realDonaldTrump/posts/114139222625284782
[12] https://truthsocial.com/@realDonaldTrump/posts/114139222625284782
[13] https://truthsocial.com/@realDonaldTrump/posts/114139222625284782
[14] https://x.com/DHSgov/status/1898908955675357314
[15] https://www.thefp.com/p/the-ice-detention-of-a-columbia-student
[16] Amended Petition for Writ of Habeas Corpus, Case 1:25-cv-01935, Dkt. 38 at 2-3 (March 13, 2025).
[17] https://www.thefp.com/p/the-ice-detention-of-a-columbia-student

48.     In a press conference on March 12, 2025, Secretary of State Rubio stated, "if you tell us that you are in favor of a group like this [Hamas], and if you tell us . . . I intend to come to your country as a student, and rile up all kind of anti-Jewish, anti-semitic activities, and "if you end up having a green card . . . we're going to kick you out."[18]

49.     Following the arrest of Mr. Khalil, Betar revived its public calls for the deportation of Mr. Mahdawi. On March 14, 2025, Betar posted on social media platform X that "Mohsen Mahdawi is next and also on the deport list."[19] A week later, on March 20, 2025, Betar again posted, "Mohsen Mahdawi is next and also on the deport list."[20]

***Mohsen's Detention by DHS as Implementation of the Policy to Arrest Protestors***

50.     On April 14, 2025, Mr. Mahdawi was attending a naturalization interview at 463 Mountain View Drive, Colchester, VT  05446 when he was arrested and detained by DHS officers.

51.     Public statements up by government officials, including statements by the President and Secretary of State, establish that Respondents have detained Mr. Mahdawi to punish and silence him because of his constitutionally protected speech, beliefs, statements, or associations.

52.     Under the Immigration and Nationality Act, the Secretary of State is prohibited from excluding or conditioning entry to noncitizens based on "past, current, or expected beliefs, statements, or associations, if such beliefs, statements, or associations would be lawful within the United States," unless the Secretary personally certifies to Congress that admitting the individual would compromise a compelling U.S. foreign policy interest. Section 212(a)(3)(C)(iii) of the INA, 8 U.S.C. § 1182(a)(3)(C)(iii).

---

[18] http://state.gov/secretary-of-state-marco-rubio-remarks-to-press/
[19] https://x.com/Betar_USA/status/1900611049637724488
[20] https://x.com/Betar_USA/status/1900611049637724488

53.     Upon information and belief, Secretary Rubio has not provided any such certifications to the chairs of the House Foreign Affairs, Senate Foreign Relations, and House and Senate Judiciary Committees, as required by 8 U.S.C. § 1182(a)(3)(C)(iv).

54.     Notwithstanding such a determination, legislative history demonstrates that Congress intended to prevent the Executive from excluding noncitizens based on their constitutionally protected speech and beliefs. The Moynihan Amendment, passed in 1987, was intended "to take away the executive branch's authority to deny visas to foreigners solely because of the foreigner's political beliefs or because of his anticipated speech in the United States" and to affirm "the principles of the First Amendment." (S. Rep. No. 100–75 at 11, 100th Cong., 1st Sess. (1987), reprinted in 133 Cong. Rec. S2326 (1987)).

55.     Congress also asserted that such exclusions should not be based solely on "the possible content of an alien's speech in this country," that the Secretary should issue such determinations "sparingly and not merely because there is a likelihood that an alien will make critical remarks about the United States or its policies," and that the "compelling foreign policy interest" standard should be applied strictly. (H.R. Conf. Rep. No. 101-955, 101st Cong., 2nd Sess. (1990), reprinted in 1990 U.S.C.C.A.N. 6784, 6794.  The legislative history provided, as an example, the entry of the Shah of Iran into the United States, which could imminently have resulted in harm to U.S. persons or property abroad. *Id.* at 6793.

56.     Such determinations have been rarely issued since the enactment of the provision. Where the Secretary of State has invoked the foreign policy ground, it has concerned a high-ranking government official or individual facing high-profile prosecutions in his country of origin.

57.     At least until these recent arrests, on information and belief, section 237(a)(4)(C) of the INA has never been invoked based purely on lawful beliefs, statements, or associations, that have taken place within the United States. This may be because it is a grammatically awkward at

13

best to apply the provisions of INA § 212(a)(3)(C), 8 U.S.C. § 1182(a)(3)(C), incorporated by reference into INA § 237(a)(4)(C), 8 U.S.C. § 1227(a)(4)(C), to beliefs, statements, or associations which <u>are</u> or <u>were</u> lawful in the United States, and to say of such activities, in what appears to be counterfactual language, that they "would be lawful within the United States," 8 U.S.C. § 1182(a)(3)(C)(iii).  Moreover, given the choice between an interpretation of the statute that would remove such lawful beliefs, statements, and activities that take place within the United States from the protection of the exemption at 8 U.S.C. §1182(a)(3)(C)(iii), and an interpretation that would prevent such lawful beliefs, statements, or activities that take place within the United States from being used a basis for a finding of inadmissibility or deportability under 8 U.S.C. § 1182(a)(3)(C) and 8 U.S.C. § 1227(a)(4)(C), the doctrine of constitutional doubt counsels in favor of the latter interpretation.

## CLAIMS FOR RELIEF

### FIRST CLAIM

**Violation of the First Amendment to the United States Constitution**

58.    Petitioner realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

59.    The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. Amend. I.

60.    The First Amendment protects speech by noncitizens resident in the United States.

61.    The First Amendment also protects past, present, and future speech.

62.    The government's Policy of detaining noncitizens on the basis of their protected speech, and the targeting, arrest, and detention of Mr. Mahdawi, violate the First Amendment.

63. The government targeted Mr. Mahdawi on the basis of his past protected speech.

64. The government's targeting and detention of Mr. Mahdawi prevents him from continuing to exercise his constitutional right to speech.

65. The government's targeting and detention of Mr. Mahdawi chills both his speech and the speech of other individuals who would like to express similar views.

66. The government's targeting and detention of Mr. Mahdawi may prevent his future speech in the United States in the event that he is indeed removed from the country.

67. The government's targeting and detention of Mr. Mahdawi deprives audiences of his present and future speech on matters of public concern.

68. These consequences are not incidental to some legitimate government objective. As the government has made clear, these consequences (chilling and preventing speech sympathetic to Palestine) is the ultimate objective of the government's actions.

## SECOND CLAIM

### Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution

69. Petitioner realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

70. The Due Process Clause of the United States Constitution applies to "all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,* 533 U.S. 678, 679 (2001).

71. Immigration detention must further the twin goals of ensuring a noncitizen's appearance during removal proceedings and preventing danger to the community.

72. In light of these goals, Mr. Mahdawi's detention is wholly unjustified. Indeed, it bears no reasonable relation to any legitimate government purpose.

15

73.     Mr. Mahdawi is not a flight risk. He plans to begin a master's program at Columbia in the coming fall. He has lived in the United States for the past eleven years, and his life, community, and work all are in the United States.

74.     Mr. Mahdawi is not a danger to the community. He has no criminal record, and there is no other legitimate reason to regard him as a danger to the community.

75.     Because Mr. Mahdawi's detention bears no reasonable relation to a legitimate government purpose, it is punitive.

76.     The sole basis for Mr. Mahdawi's detention is to punish him for his speech and to chill similar speech.

77.     Additionally, the Policy and Rubio Determination against Mr. Mahdawi are unconstitutionally vague.

### THIRD CLAIM

**Violation of the Administrative Procedure Act and the *Accardi* Doctrine**

78.      Petitioner realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

79.     The government has adopted a Policy of targeting noncitizens for removal on the basis of First Amendment protected speech which advocates for Palestinian rights.

80.     This policy is arbitrary, capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction, 5 U.S.C. § 706 (2)(A), (B), (C), and violates the *Accardi* doctrine and federal agencies' own rules, *see Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

81.     Additionally, the Secretary of State's determination is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C. § 706 (2)(A), (B), (C).

### FOURTH CLAIM

**Violation of the Non-Delegation Doctrine**

82.     Petitioner realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

83.     Congress has not provided the Executive Branch with intelligible principles from which the Executive Branch can implement 8 U.S.C. § 1227(a)(3)(C)(4)(i)-(ii) or 8 U.S.C. § 1182(a)(3)(C)(i) and (iii), except and to the extent that those statutes are interpreted to categorically exclude from consideration beliefs, statements, and associations that occur within the United States and that are lawful within the United States.

84.     Congress has delegated discretionary authority that is, at least if the statute is interpreted as the government apparently proposes to interpret it, standardless and unreviewable.

85.     Congress has failed to provide standards or procedures to allow for judicial review of an agency's discretionary deprivation of a noncitizen's liberty.

### FIFTH CLAIM

**Release on Bail Pending Adjudication**

86.     Petitioner realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

87.     This Court has the "inherent authority" to grant bail to habeas petitioners like Mr. Mahdawi. *See Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001).

88.     When considering such a petition, courts assess (1) "whether the petition raises substantial claims" and (2) "whether extraordinary circumstances exist that make the grant of bail necessary to make the remedy effective." *Elkimya v. Dep't of Homeland Sec.*, 484 F.3d 151, 154 (2d Cir. 2007) (cleaned up).

89.     As long as Mr. Mahdawi is in detention, he will be unable to speak freely, ratifying the ultimate constitutional violation that the government sought to achieve with his detention.

90.     As long as Mr. Mahdawi is in detention, he will be punished for his disfavored speech, ratifying another constitutional violation that the government sought to achieve with his detention

### PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1) Assume jurisdiction over this matter;
2) Vacate and set aside Respondents' unlawful Policy of targeting noncitizens for removal based on First Amendment protected speech advocating for Palestinian rights;
3) Vacate and set aside the Rubio Determination;
4) Enjoin Respondents from transferring the Petitioner from the jurisdiction of this District pending these proceedings;
5) Order the immediate release of Petitioner pending these proceedings;
6) Order the release of Petitioner;
7) Declare that Respondents' actions to arrest and detain Petitioner violate the First Amendment and the Due Process Clause of the Fifth Amendment, as well as the Administrative Procedure Act and the non-delegation doctrine;
8) Award reasonable attorneys' fees and costs for this action; and
9) Grant such further relief as the Court deems just and proper.


Dated: April 14, 2025

    Barre, Vermont

/s/ Andrew Delaney_____
Andrew Delaney
andrew@mdrvt.com
MDR Law Group
100 North Main Street
Barre, Vermont 05641
P: 802-479-0568


Luna Droubi*
Beldock Levine & Hoffman, LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
P: (212) 277-5820

F: (212) 277-5880

Cyrus D. Mehta*
David A. Isaacson**
Cyrus D. Mehta & Partners PLLC
One Battery Park Plaza, 9th Floor
New York, New York 10004
P: 212-425-0555
F: 212-425-3282

*Attorneys for Petitioner*

*Motion for admission pro hac vice forthcoming
**Motion for admission pro hac vice forthcoming, and general admission under LR 83.1(a) scheduled for April 21, 2025