IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| MOHSEN MAHDAWI,<br><br>*Petitioner*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; PATRICIA HYDE, in her official capacity as Acting Boston Field Office Director; Vermont Sub-Office Director of Immigration and Customs Enforcement; TODD M. LYONS, in his official capacity as Acting Director for U.S. Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; MARCO RUBIO, in his official capacity as Secretary of State; and PAMELA BONDI, in her official capacity as Attorney General of the United States,<br><br>*Respondents*. | Case No. 2:25-cv-00389 |

**REPLY TO RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR RELEASE UNDER *MAPP v. RENO***

**INTRODUCTION**

Petitioner Mohsen Mahdawi is being detained solely on the basis of his lawful speech in support of Palestinian human rights. Respondents have now had two weeks to advance an alternative explanation, and still Respondents do not claim otherwise or provide any contrary evidence. The extraordinary nature of Mr. Mahdawi's arrest and subsequent detention cannot be overstated: the government knowingly lured a lawful permanent resident of over ten years to his naturalization appointment only to shackle and detain him because of his advocacy. This is a blatant violation of Mr. Mahdawi's First Amendment rights, and no government official has discretion to violate the U.S. Constitution.

Mr. Mahdawi left a refugee camp in the West Bank after being shot in the leg and after witnessing the murder of loved ones. He came to the United States to complete his education and find a new life. He is neither a flight risk nor a danger to the community, quite the contrary. He hopes only to continue with his educational pursuits and become a United States citizen. Over 130 total declarations in support of Mr. Mahdawi have attested to his peace-loving nature, his deep community ties, and his rootedness in Vermont. Nearly 50 newly-received declarations, including from individuals who have known him since he first arrived in the United States and a letter of support signed by over 200 Israelis, further illustrate that Mr. Mahdawi is an asset to society, not a danger.

Respondents attempt to obfuscate the unprecedented nature of this arrest and incarceration and diminish this Court's inherent authority to order Mr. Mahdawi's release pending the adjudication of this habeas petition. There is no jurisdictional bar to a constitutional challenge to the legality of *detention*, as the Supreme Court has repeatedly held. And this is clearly an unusual case, raising substantial claims and extraordinary circumstances, warranting release under *Mapp v. Reno*.

In arresting a lawful permanent resident for nothing more than his speech, the government has mounted a full-frontal attack on First Amendment freedoms. The Court should reject Respondents'

1

arguments and exercise its inherent authority to restore Mr. Mahdawi to his freedom—the status he had prior to the present controversy, and the only status that is constitutionally justified—pending further adjudication.

## ARGUMENT

### I. MR. MAHDAWI EASILY ESTABLISHES A SUBSTANTIAL CLAIM

Mr. Mahdawi's habeas corpus petition raises substantial claims under the First Amendment. He has shown through the government's own evidence—and which the government does not dispute—that his lawful speech is the sole basis of his detention. (Dkt. No. 42 at 2; Dkt. No. 42-1 at 1-2; Dkt. No. 19-3, Form I-213 at 2). The Respondents' own official, signed report provides that the only basis for Mr. Mahdawi's arrest was related to his purported "leadership and involvement . . . in protests at Columbia University"—speech that Respondents necessarily deemed lawful because the Secretary of State made a determination pursuant to 8 U.S.C. § 1182(a)(3)(C)(iii), *cited in* 8 U.S.C. § 1227(a)(4)(C)(ii) (addressing certain speech "that would be lawful within the United States"). (Dkt. No. 19-3; Dkt. No. 19-4, at 2.).

Respondents contend, relying chiefly on *Harisiades v. Shaughnessy,* 342 U.S. 580, 591-92 (1952), that "[t]he Supreme Court has affirmed that the Executive Branch may base removal actions on an alien's political activity." Dkt. No. 42 at 5. This misreads *Harisiades*, which involved "joining an organization advocating overthrow of government by force and violence," and applied a statute expressly proscribing "membership" in the "communist party." *Harisiades*, 342 U.S. at 591-592.[1] Although *Harisiades* upheld the deportation of noncitizens based on their Communist Party membership, it did so on the ground that such membership was not protected under then-current First

---

[1] Respondents also selectively quote from *Bluman v. Fed. Election Comm'n*, 800 F.Supp. 2d 281, 287 (D.D.C. 2011) ("the Court has indicated that alien's first amendment rights **might** be less robust than those of citizens **in certain discrete areas**.") (emphasis added), which only concerned activities related to democratic self-governance, like voting and holding office.

2

Amendment doctrine, regardless of citizenship status. *See* 342 U.S. at 592 & n.18 (citing *Dennis v. United States*, 341 U.S. 494 (1941)). No one suggests that Mr. Mahdawi has joined an organization advocating for violent overthrow of the U.S. government, and the government concedes that his "associations" are lawful. (Dkt. No. 42 at 2, citing 8 U.S.C. § 1227(a)(4)(C)). The controlling rule here is thus that "[f]reedom of speech and of press is accorded aliens residing in this country." *Bridges v. Wixon*, 326 U.S. 135, 148 (1945). Applying 8 U.S.C. § 1227(a)(4)(C) to justify Mr. Mahdawi's detention for his protected speech is therefore unconstitutional, whether or not the statute may be unconstitutional as a general matter for other reasons, *see* Dkt. No. 1 at ¶¶ 83-85.

Respondents also contend that "Secretary of State Rubio's foreign-policy determination is not reviewable under the First Amendment" because "[t]he Supreme Court has recognized that administering the nation's foreign policy is the province of the Executive Branch, especially in the context of immigration enforcement." Dkt. #42 at 6. This argument badly overreaches. Respondent's contention implies that Secretary Rubio could unreviewably decree the detention and removal of all aliens of a particular religion, or all aliens who have ever said an unkind word about the current President. Given *Bridges*, 326 U.S. at 148, that cannot be the law. *See also Ragbir v. Homan,* 923 F.3d 53 (2d Cir. 2019) ("[Ragbir's] advocacy for reform of immigration policies and practices is at the heart of current political debate among American citizens and other residents"). And because this constitutional jurisprudence creates "judicially manageable standards" to adjudicate Mr. Mahdawi's claims, *Baker v. Carr*, 369 U.S. 186, 217 (1962), there is no unreviewable political question here.

## II.     MR. MAHDAWI'S CASE PRESENTS EXTRAORDINARY CIRCUMSTANCES[2]

---

[2] "[E]xtraordinary circumstances" comes from *Aronson v. May*, 85 S. Ct. 3 (1964) where the petitioner had been convicted and sentenced before bringing a habeas petition and seeking release on bail. The Court held that in addition to "substantial questions presented by the appeal," there must be "some circumstance making this application exceptional and deserving of special treatment in the interests of justice." *Id.* at 6-7. A "greater showing of special reasons" was necessary where a habeas petition followed a conviction and sentence, as opposed to "a case where applicant had sought to attack by writ of habeas corpus an incarceration not resulting from a judicial determination of guilt." *Id.* Mr. Mahdawi's petition fits into the latter category. Other courts have also opined that the relative liberty interest of the Petitioner is relevant in granting release. *See, e.g.*, *Grune v. Coughlin*, 913 F.2d 41 (2d Cir. 1990).

Virtually every aspect of this case is extraordinary, and Respondents do not even attempt an argument to the contrary. *See* Dkt. No. 42 at 7. The circumstances surrounding Mr. Mahdawi's apprehension, the scope of the constitutional violation, and the harm it has caused and will continue to cause to his education and to his health must lead to a finding of extraordinary circumstances.

The nature of Mr. Mahdawi's apprehension in and of itself was extraordinary. Respondent Marco Rubio made his "determination" with respect to Mr. Mahdawi on March 14, 2025, one month before his arrest on April 14, 2025. The Respondents sent Mr. Mahdawi a notice to appear for his naturalization interview on March 27, 2025, two weeks after the determination was made. Respondents therefore scheduled the interview with the knowledge and intent to punish Mr. Mahdawi in the most extraordinary of ways: having him conclude his naturalization interview before masked and armed agents handcuffed him, forced him into a car, and rushed him to the airport with the goal of sending him to Louisiana, away from his home and support systems.

With respect to the scope of the constitutional deprivation, this too is extraordinary. In fact, it is unprecedented. The government concedes that it has detained Mr. Mahdawi on no other basis than his lawful speech and associations. (Dkt. No. 19-3, Form I-213 at 2.) The provision of the INA cited by Respondents as justification for detaining Mr. Mahdawi has not, to counsel's knowledge, ever been applied as the sole charge to detain and deport a lawful permanent resident for engaging in First Amendment protected speech until March of 2025, when Respondents targeted lawful permanent resident Mahmoud Khalil for his protected speech. In the decades since Section 237(a)(4)(C)(i) has been enacted, it has been reserved for cases involving high-ranking government officials or an alleged terrorist removable on other grounds and subject to high-profile prosecutions in their country of origin. *Matter of Ruiz-Massieu*, 22 I&N Dec. 833 (BIA 1999).

The government's violation of Mr. Mahdawi's First Amendment rights through his arrest and detention is clear and extraordinary. It is well established that "[t]he loss of First Amendment

4

freedoms, for even minimal periods of time, constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also, e.g.*, *Vacchio v. Ashcroft*, 404 F.3d 663, 673 (2d Cir. 2005) (calling a showing of irreparable harm "analogous" to a showing of "extraordinary circumstances"). Each day of Mr. Mahdawi's continued detainment renews the violation of his First Amendment rights by restricting his contact with the outside world and hindering his ability to speak freely. *See, e.g.*, *Ramatu Kiadii v. Decker*, 423 F. Supp. 3d 18, 20 (SDNY 2018) (wondering "if the *Mapp* court could have imagined circumstances more extraordinary than the detention of a woman credibly claiming United States citizenship"); *Coronel*, 449 F. Supp. 3d at 239 ("[T]he Court . . . finds extraordinary circumstances with regards to Petitioners' procedural due process claims.").

Finally, Mr. Mahdawi will suffer as a result of his continued detention. Mr. Mahdawi came to this country, in part, to build a better life and to obtain an education. As a result of the government's conduct, Mr. Mahdawi will not be able to graduate from Columbia University. (Droubi Decl. Ex. 1-CB). And if does not receive his degree prior to the start of fall of 2025, Mr. Mahdawi will be ineligible to register in the master's program that he has been admitted to. *Id.* Additionally, Mr. Mahdawi suffers from health issues that have been exacerbated by his confinement, and if he is not released pending adjudication of his habeas petition, his health will continue to deteriorate. (Ex. 3 ¶ 8; Ex. 2 ¶¶ 2-19). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████

The element of the *Mapp* standard, "necessary to make the habeas remedy effective," comes from a fifth circuit case, *Boyer v. Orlando*, 402 F.2d 966 (5th Cir. 1968). *See Mapp*, 241 F.3d at 226. There, where a Petitioner challenged his misdemeanor conviction alleging denial of his right to counsel, which he had not been provided, the Fifth Circuit reasoned that "Boyer's sentence would long have been served before" his habeas case could be heard, and thus "no practical relief could be afforded notwithstanding the Court's recognition of his constitutional claim." *Id.* at 968. Therefore, the Court ordered the Petitioner released on bail to make his remedy truly effective.

The same analysis applies in this circumstance. Mr. Mahdawi argues that his detention is a violation of the First Amendment, and that every day he is incarcerated is a further violation of his constitutional rights. In the parallel removal proceeding, however, the immigration judge and the Board of Immigration Appeals lack jurisdiction over Mr. Mahdawi's constitutional claims, as Respondents concede, *see* Apr. 23, 2025 Tr. at 12. Like in *Boyer*, this provides Mr. Mahdawi with no effective remedy. In *Boyer*, by the time adjudication of Boyer's constitutional claims and release under habeas could be sought, his sentence would have long been served; in this case, by the time adjudication of Mr. Mahdawi's constitutional claims and release under habeas could be sought, he will have endured the very speech-restricting unconstitutional detention his habeas petitioner aims to address, likely for years. The speech of others will have been chilled for all that time as well. In other

6

words, "no practical relief could be afforded notwithstanding the Court's recognition of his constitutional claim." *Boyer* at 968. The only way to make the habeas remedy effective is to release Mr. Madhawi pending resolution of his habeas petition.

### III. MR. MAHDAWI IS NOT A DANGER TO SOCIETY OR A FLIGHT RISK

Courts have also found that lack of dangerousness and flight risk support a finding of extraordinary circumstances. *D'Alessandro*, 2009 U.S. Dist. LEXIS 24954 *16. As the over 130 declarations establish, including nearly 50 newly submitted declarations attached as **Exhibit 1**, Mr. Mahdawi is a beloved member of his communities and poses no danger to society and is not a flight risk. One such submission was signed by over 200 Israeli citizens in the U.S. and 250 others who are "appalled" by the "immoral detainment of Mohsen Mahdawi, a Palestinian activist and an advocate of peace, by ICE." (Droubi Decl. Exhibit 1-A). They write, "[t]he targeting of Mohsen is especially absurd given his prominent voice in advocating for dialogue and cooperation between Israelis and Palestinians on Columbia's campus, in the NYC community, and beyond," adding "Mohsen actively built ties with Israelis, understanding that the only sustainable way forward in Israel/Palestine is through shared work between Israelis and Palestinians. Many of us have worked with and gotten to know Mohsen on a deeply personal level. We have been moved by his empathy, kindness, and fortitude." *Id*.

The Respondents' only claims otherwise come in the form of old and unsubstantiated allegations that have long been dismissed. Respondents present a 10-year-old report, memorializing hearsay of two individuals, which was promptly closed by the Windsor Police Department (Ex. 2 ¶¶ 35-39), and incidents related to his divorce from November 18, 2015 (Dkt 42-2 at 5). Mr. Mahdawi is unequivocal that he never made the statements misattributed to him in the decade-old reports. In fact, Mr. Mahdawi later discussed with investigators his concern that the shop owner's conduct was fueled by animus related to his national origin, and their query with him went no further. (Ex. 2. ¶¶

7

20-38). Respondents provide no information regarding further investigation or determinations on the allegations, a glaring omission which is likely because such information would demonstrate that these claims were ultimately found to be baseless. Indeed, Respondents' selective disclosures to the Court obscure the truth more than clarify it. The only other basis upon which Respondents claim Mr. Mahdawi is a "danger to society" was a temporary detention by Customs and Border Patrol from six years ago related to his lawful prescription medication for a medical condition and vitamins. This incident led to no charges and was fully expunged. (Ex. 2 ¶¶ 42-45, Exhibit A). Indeed, Respondents themselves concede that Petitioner "has not been convicted of criminal offenses." (Br. at 8.)

Respondents also falsely claim that none of the declarations stem from individuals who knew of Mr. Mahdawi in or around these relevant time periods. (Br. at 9.) *But see,* Dkt. No. 19-1, Ex. 1-BU ("I've known Mohsen for over 10 years" and calls him "one of the most spiritually gifted young men that I have met"). New declarations from those who have known him for the past 10 years confirm that "his message has been one of peace and tolerance" and that he "bring[s] people together from 'both sides of the aisle' to share a meal and talk." (Ex. 1-H; 1-B, 1-D, 1-H, 1-X, 1-AK.) Even his ex-wife, who Respondents attempt to implicate in preventing his release, shares only praise about her former spouse, describing him as "kind[]" and "hardworking," noting that he "earned people's trust and treated everyone like family" and that he "brought joy, insight, introspection, and that same curiosity to every interaction," and concluding that Mr. Mahdawi is "everything that America stands for, opportunity, ingenuity, and hard work." (Ex. 1-AU.)[3]

IV. **MR. MAHDAWI WOULD COMPLY WITH ANY COURT CONDITIONS**

Mr. Mahdawi "poses no danger to the community," is not a "flight risk," and is not

---

[3] Petitioner's ex-wife executed her declaration prior to the government's filing, and she is currently unreachable for the remainder of this week while at a retreat. Should the Court seek additional corroboration that the unsubstantiated allegations in the 2015 police report are not accurate, counsel anticipates that she should be reachable and able to file a supplemental declaration by the morning of May 2 with additional clarifying testimony.

"dangerous"; all conditions that warrant his immediate release. *Barbecho v. Decker*, 2020 U.S. Dist. LEXIS 66163, at *22 (S.D.N.Y. Apr. 14, 2020). Mr. Mahdawi has a home in Vermont, and an apartment in New York City. (Ex. 4) He owns a car and has a large support system. *Id*. And the Burlington Community Justice Center has declared that they will provide supervision, court reminders, connections to support, and periodic updates to the Court. (Ex. 5 ¶ 8.)

In light of Petitioner's lack of flight risk and deep community ties, conditions of release are not necessary. Nonetheless, Mr. Mahdawi has sworn that he would comply with any conditions the Court deems reasonable, including staying within the bounds of Vermont except for travelling to and from Columbia University when necessary for his studies or for his graduation, or for shopping at nearby shopping centers in New Hampshire. (Ex. 2 ¶¶ 47-50.) *See D'Alessandro v. Mukasey*, 2009 U.S. Dist. LEXIS 24954, at *18-19 (W.D.N.Y. Mar. 25, 2009) (granting an order to release a habeas petitioner based on a finding of a substantial claim and extraordinary circumstances, and ordering that the Petitioner be subjected to certain conditions). As such, Mr. Mahdawi should immediately be released.

V. **NOTHING ELIMINATES THIS COURT'S INHERENT AUTHORITY TO RELEASE MR. MAHDAWI PENDING ADJUDICATION OF HIS HABEAS PETITION.**

None of the provisions cited by Respondents prevent this Court from releasing Mr. Mahdawi. In fact, Respondents' argument was recently rejected by another judge of this Court with regard to a similar habeas petition filed by nonimmigrant student Rumeysa Ozturk. *See Ozturk v. Trump*, 2:25-cv-00374-wks, 2025 WL 1145250, at *11 (D.Vt. April 18, 2025).

The jurisdiction-stripping provision in 8 U.S.C. § 1252(g) does not apply to a constitutional challenge to the legality of detention. The government misapprehends *Reno v. AADC*, 525 U.S. 471, 482 (1999). There, the Supreme Court held that this provision is tethered solely to "three discrete actions" referenced in 8 U.S.C. § 1252(g), and therefore does not alter a court's jurisdiction to review "many other decisions or actions that may be part of the deportation process." *Id.* at 483. *AADC* was

9

"exclusively about removal," whereas here, the "plain text of subsection (g) does not support a reading that [Petitioner's] detention and resulting constitutional claims arise from" these three discrete actions. *Ozturk*, Doc No. 104, slip op. at 37,v41. As in *Ozturk*, "whether removal proceedings have proceeded according to law and in comport with the Constitution is not a question before this Court," and the government's argument "stretches the bounds of the text and the facts of this case." *Id*. at 37-38; *see Bello-Reyes v. Gaynor,* 985 F.3d 696, 698 (9th Cir. 2021) (addressing merits of First Amendment challenge to ICE detention); *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 921 (W.D. Tex. 2018) (same).

Next, 8 U.S.C. § 1226(e) has no application to a petitioner's challenge to the legality of his detention. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). It also is not, contrary to the government's suggestion, an example of Congress, after *Mapp*, having "since legislated to further insulate immigration detention from habeas review." Dkt. #42 at 4. *See, e.g., Elkimya v. Dep't of Homeland Sec,* 484 F.3d 151, 154 (2d Cir. 2007) (rejecting the government's argument that the REAL ID Act undermined the availability of release on bail pursuant to *Mapp*).

Finally, 8 U.S.C. § 1252(a)(2)(B)(ii) does not apply here. It applies to "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security," 8 U.S.C. § 1252(a)(2)(B)(ii), and "the Government has no discretion to violate the Constitution," *Xi v. Haugen*, 68 F.4th 824, 829 (3d Cir. 2023); *see Ozturk*, slip op. at 46.

## CONCLUSION

The opposition relies on mischaracterized precedents, outdated and misleading allegations, and conflation of detention authority with foreign policy adjudication. *Mapp*'s standard for bail—substantial claims and necessity for effective habeas—is met here.

Dated: April 29, 2025
Burlington, Vermont

Respectfully submitted,

/s/ Lia Ernst
Monica H. Allard
Hillary A. Rich
**ACLU FOUNDATION OF VERMONT**
P.O. Box 277
Montpelier, VT 05601
P: (802) 223-6304
lernst@acluvt.org

_____
Andrew B. Delaney
**MARTIN DELANEY & RICCI LAW GROUP**
100 North Main Street
Barre, Vermont 05641
andrew@mdrvt.com
P: 802-479-0568

Nathan Freed Wessler*
Brett Max Kaufman*
Brian Hauss*
Esha Bhandari*
Noor Zafar*
Sidra Mahfooz*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10004
P: (212) 549-2500
nwessler@aclu.org

Luna Droubi*
Matthew Melewski*
**BELDOCK LEVINE & HOFFMAN LLP**
99 Park Avenue, PH/26th Floor
New York, New York 10016
P: (212) 277-5875
F: (212) 277-5880
ldroubi@blhny.com
mmelewski@blhny.com

**CLEAR PROJECT**
**MAIN STREET LEGAL SERVICES, INC.**
Ramzi Kassem***
Naz Ahmad***
Mudassar Hayat Toppa***
Shezza Abboushi Dallal*
CUNY School of Law
2 Court Square, 5th Floor
Long Island City, NY 11101
Tel.: (718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu
shezza.dallal@law.cuny.edu

Cyrus D. Mehta*
David A. Isaacson
**CYRUS D. MEHTA & PARTNERS PLLC**
One Battery Park Plaza, 9th Floor
New York, New York 10004
P: 212-425-0555
F: 212-425-3282

11

*Attorneys for Petitioner*

\*Pro Hac Vice

\*\*\*Pro Hac Vice application forthcoming