# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

MOHSEN MAHDAWI,

       *Petitioner*,

   v.

DONALD J. TRUMP, in his official capacity as President of the United States; PATRICIA HYDE, in her official capacity as Acting Boston Field Office Director; Vermont Sub-Office Director of Immigration and Customs Enforcement; TODD M. LYONS, in his official capacity as Acting Director for U.S. Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; MARCO RUBIO, in his official capacity as Secretary of State; and PAMELA BONDI, in her official capacity as Attorney General of the United States,

       *Respondents*.

Case No. 2:25-cv-00389

# MEMORANDUM OPPOSING RESPONDENTS' MOTION TO DISMISS

## INTRODUCTION

In his habeas petition, Petitioner and lawful permanent resident Mohsen Mahdawi challenges the government's unconstitutional retaliation against him for his purely lawful speech. That retaliation is comprised of the government's arrest and detention of Mr. Mahdawi, as well as its intended removal of him from the United States, pursuant to a government policy (the "Policy") to punish noncitizens for their speech and expressive conduct related to Palestine and Israel. Under the Policy, Respondent and Secretary of State Marco Rubio asserts the unilateral and unreviewable power to issue determinations that particular noncitizens—including college or graduate students like Mr. Mahdawi—who protested against or criticized the Israeli government are, through their very presence inside the country, causing "serious foreign policy consequences" for the United States. As the Court is likely aware, the government has largely shirked defending its actions on the merits of Mr. Mahdawi's or the other noncitizen students' constitutional claims. Instead, the government has pressed arguments that federal habeas courts lack jurisdiction under the Immigration and Nationality Act ("INA") to adjudicate those claims, including their claims of unlawful arrest and detention. Courts throughout the country, including this one and the Second Circuit, have either rejected these arguments outright or at least found them unlikely to prevail—and not a single court has agreed with the government to date.

In its motion to dismiss Mr. Mahdawi's petition, the government renews these jurisdictional arguments. First, it argues that the INA bars this Court's review of Mr. Mahdawi's unlawful detention claim. But this Court and the Second Circuit have already rejected these same arguments under "likelihood of success" review. Second, seeking to defeat Mr. Mahdawi's other claims, the government offers new but related INA-based arguments. These arguments also fail.

## FACTUAL & PROCEDURAL BACKGROUND

Mr. Mahdawi was born and raised in the West Bank. (Dkt. No. 54 at 1.) He entered the United

1

States legally in July 2014 and has been a lawful permanent resident for 10 years. *Id.* He is a Vermont resident, *id.*, and just last month, he graduated from Columbia University with a major in philosophy.[1] He plans to begin a master's program at Columbia's School of International and Public Affairs beginning in the fall of 2025. (Dkt. No. 54 at 2.) As a student at Columbia, Mr. Mahdawi dedicated himself "to understanding how to achieve a lasting peace for Palestinians and Israelis, particularly through the study of conflict resolution." (Dkt. No. 54 at 2.) After Israel took military action in Gaza in October 2023, Mr. Mahdawi was "outspoken in opposition to the war." *Id.* He is steadfastly committed to principles of nonviolence and peaceful political activism. *Id.*

On April 14, 2025, Mr. Mahdawi was arrested after a scheduled naturalization interview in Vermont. *Id.* at 5. Unbeknownst to him, four weeks earlier, Respondent Rubio had secretly issued a memorandum, pursuant to 8 U.S.C. § 1227(a)(4)(C)(ii), declaring Mr. Mahdawi deportable for his lawful speech and associations. (Dkt. No. 42-1.) Upon Mr. Mahdawi's arrest, the government began what it intended to be a journey to immigration detention in Louisiana. (Dkt. No. 54 at 5–6.) Before that could happen, Mr. Mahdawi's lawyers filed his petition, Dkt. No. 1, and the Court entered an order enjoining Mr. Mahdawi's transfer or removal, Dkt. No. 6.

Mr. Mahdawi remained detained in Vermont for the next 16 days—until, on April 30, this Court granted his motion for release pursuant to *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001). (Dkt. No. 19.) In opposition to that motion, the government had filed a pre-hearing statement that was converted into a motion to dismiss with the government's consent. Gov't Mot. to Dismiss Pl's Habeas Pet. ("MTD"), Dkt. No 25; Transcript of Status Conference, Case No. 2:25-cv-389, at 9 (D. Vt. Apr. 23, 2025)). After further briefing on the *Mapp* motion and an April 30 hearing, this Court granted Mr. Mahdawi's bail application, and he was set free. (Dkt. No. 54.) In justifying his release, the Court

---

[1] Sharon Otterman, *Mohsen Mahdawi, Released from ICE Custody, Graduates from Columbia*, N.Y. Times (May 19, 2025), https://www.nytimes.com/2025/05/19/nyregion/mohsen-mahdawi-columbia-graduation.html.

2

made a preliminary determination that it had jurisdiction over Mr. Mahdawi's petition, and concluded that the petition raised substantial constitutional claims and that extraordinary circumstances warranted his release from government custody. *Id.* at 9-15, 18, 24–25. In making the latter determination, the Court credited the "over 125 letters of support from professors, neighbors, fellow students, and others who know [Mr. Mahdawi] well" which "[a]ll attest to his mild and peaceful nature, his deep intelligence, and his commitment to principles of non-violence and political activism." *Id.* at 6.

The government appealed the bail order and this Court's order extending the temporary restraining order ("TRO") that prevented Mr. Mahdawi's removal from Vermont, Dkt. No. 34, to the U.S. Court of Appeals for the Second Circuit, Dkt. No. 55, and filed a motion for a stay pending appeal. No. 25-1113 (2d Cir.), Dkt. No. 20. The Second Circuit denied the motion for a stay, in an opinion finding the government unlikely to prevail on its arguments that this Court lacked jurisdiction. *Mahdawi v. Trump*, 136 F.4th 443 (2d Cir. 2025). Briefing on the merits of the appeal is scheduled over the coming months. No. 25-1113 (2d Cir.), Dkt. No. 98.

Since his release on bail, Mr. Mahdawi has graduated from Columbia, rejoined his communities in Vermont's Upper Valley, and renewed his calls for peace.[2]

## **ARGUMENT**

### I. **THE INA DOES NOT DEPRIVE THIS COURT OF JURISDICTION OVER MR. MAHDAWI'S CLAIMS.**

#### **A. The INA does not bar Mr. Mahdawi's detention claims.**

This Court and the Second Circuit have already decided that the Court likely has jurisdiction

---

[2] *See, e.g.*, Arya Sundaram, *Columbia's Mohsen Mahdawi, Fresh Out of U.S. Detention, Walks the Graduation Stage*, Gothamist (May 19, 2025), https://gothamist.com/news/columbias-mohsen-mahdawi-fresh-out-of-us-detention-walks-the-graduation-stage; Sabine Poux, *After Release from Prison, Mohsen Mahdawi is Rooted in the Upper Valley – and in His Purpose*, Vermont Public (May 6, 2025), https://www.vermontpublic.org/local-news/2025-05-06/after-release-from-prison-mohsen-mahdawi-back-home-upper-valley-rooted-sense-of-purpose.

over Mr. Mahdawi's detention claims, and the government offers nothing new to disturb that prior analysis. The Second Circuit addressed the government's jurisdictional challenges at length and, in affirming this Court's ruling on jurisdiction in the *Mapp* release order, Dkt. No. 54 at 7–15, found that the government was unlikely to succeed on the very same arguments the government proffers in its motion to dismiss. This Court should reject those arguments here.

### 1. 8 U.S.C. § 1252(g)

First, the Second Circuit squarely found the government was unlikely to succeed on its arguments with respect to 8 U.S.C. § 1252(g). As it noted:

> The Supreme Court and our Court have explained that § 1252(g)'s bar on jurisdiction is "narrow[ ]," and "applies only to three discrete actions": a decision "to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.* ("AADC"), 525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g) (emphases adopted)); *see also Öztürk*, ––– F.4th at ––––, 2025 WL 1318154, at *8. Section 1252(g) is thus "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9. But there are "many other decisions or actions that may be part of the deportation process" and yet do not fall within the three discrete exercises of "prosecutorial discretion" covered by § 1252(g). *Id.* at 482, 485 n.9, 119 S.Ct. 936; *see also Öztürk*, ––– F.4th at ––––, 2025 WL 1318154, at *8.

*Mahdawi*, 136 F.4th 443 at 450. Mr. Mahdawi's "challenge[] to his **detention** on the grounds that it violates his rights under the Constitution" is not precluded by § 1252(g), because that detention is not an inevitable result of the commencement of proceedings. *Id.* at 450–51. This is especially true in light of the "longstanding principles of statutory interpretation requiring Congress to speak clearly and specifically when it wishes to deprive the federal courts of jurisdiction." *Id.* at 449.

The cases that the government cites in its motion are inapplicable. *See* MTD at 4–6. *AADC* "is . . . of no help to the government" because it "did not sound in unlawful detention at all." *Mahdawi*, 136 F.4th at 451. *Rauda v. Jennings*, 55 F.4th 773 (9th Cir. 2022), concerned a request by a noncitizen with a final order of removal for "a temporary restraining order to prevent the government from removing him from the United States." *Id.* at 775; *see also Elgharib v. Napolitano*, 600 F.3d 597, 599 (6th Cir. 2010) (same); *E.F.L. v. Prim*, 986 F.3d 959, 962–64 (7th Cir. 2021) (similar); *Cooper Butt*

*v. ex rel. Q.T.R. v. Barr*, 954 F.3d 901, 903 (6th Cir. 2020) (plaintiff's father had been removed pursuant to a final order of removal). Here, by contrast, there is no removal order to execute.

*Tazu v. Att'y Gen.*, 975 F.3d 292 (3d Cir. 2020), *cited in* MTD at 4, 6, also involved a challenge to the execution of an already-existing removal order. Its finding that "a brief door-to-plane detention is integral to the act of execut[ing] [a] removal order[]," *Tazu*, 975 F.3d at 298, is inapplicable here, where Mr. Mahdawi has no order of removal. Moreover, *Tazu* held that the government needed to detain the petitioner in order to effectuate his removal. But nothing like that is at issue here. Mr. Mahdawi could easily have been served with a Notice to Appear, and thereby placed in removal proceedings, without being detained. *See Mahdawi,* 136 F.4th at 451–52.

In *Ajlani v. Chertoff*, 545 F.3d 229 (2d Cir. 2008), *cited in* MTD at 6, the petitioner "requested that the district court enjoin defendants from removing him from the United States," *Ajlani*, 545 F.3d at 233, and sought a "declaration that the then-pending removal proceedings against him were unconstitutional and discriminatory." *Id.* at 235. He did not seek relief from detention, as Mr. Mahdawi does. Nor did he seek relief against a separate cabinet official other than the Secretary of Homeland Security or Attorney General, or allege a general discriminatory policy separate from any particular removal proceeding, as discussed further below.[3]

The government seeks to distinguish Judge Sessions' ruling in *Öztürk v. Trump*, ___ F. Supp. 3d ___, Case No. 2:25-cv-374, 2025 WL 1145250 (D.Vt. April 18, 2025) ("*Öztürk I*"), which the Second Circuit also declined to stay, *Öztürk v. Hyde*, 136 F.4th 382 (2d Cir. 2025) ("*Öztürk II*"), on the basis that Mr. Mahdawi's Petition "concerns the government's retaliatory and targeted detention *and attempted removal* of Mr. Mahdawi for his constitutionally protected speech." MTD at 6

---

[3] Similarly, the plaintiff in *Obado v. Superior Court of New Jersey Middlesex County*, 2022 WL 283133 (D.N.J. Jan. 31, 2022), *cited in* MTD at 8, requested the Court to "terminate the notice to appear in immigration removal proceedings scheduled for October-November 2021 in Newark Immigration Courts," 2022 WL 283133 at *1.

5

(emphasis in original). But this language, which refers to the Policy and the Rubio Determination (addressed further below), does not change the fact that, as to the Attorney General and the Secretary of Homeland Security, the core of the claim here relates to impermissible *detention*, not the initiation of proceedings. The Second Circuit has made clear that any jurisdictional issues regarding Mr. Mahdawi's other claims for relief do not impact this Court's jurisdiction over his claim of unlawful detention. *See Ozturk II,* 136 F.4th at 450 & n.3. This Court has jurisdiction over that challenge, just as other courts had jurisdiction over similar detention claims. *See Bello-Reyes v. Gaynor,* 985 F.3d 696, 698 (9th Cir. 2021) (addressing merits of First Amendment challenge to ICE detention); *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 921 (W.D. Tex. 2018) (same).[4]

The government's contention that Mr. Mahdawi's unlawful detention claim is "really a challenge to *whether* and *when* to commence proceedings," or the "method" by which to commence them, MTD at 8, is wrong. Mr. Mahdawi's "claims of unlawful and retaliatory detention are independent of, and collateral to, the removal process." *Mahdawi*, 136 F.4th at 397. They do not "arise from" the commencement of proceedings, the decision to adjudicate his removal case, or the decision to execute a removal order (there isn't one). *Id*. Thus, they do not fall within 1252(g)'s narrow ambit. *Id*. at 398 (finding the government's interpretation of 1252(g) "'implausible'" (citing *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020)). Indeed, none of the cases the government cites involved challenges to unlawful detention. The petitioner in *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594 (9th Cir. 2002), *cited in* MTD at 8, complained of the failure of the INS to "commence[] deportation proceedings against her . . ." *Jimenez-Angeles*, 291

---

[4] The government's citations to *Zundel v. Gonzales*, 230 F. App'x 468, 475 (6th Cir. 2007), *Humphries v. Various Fed. U.S. INS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999), *Vargas v. United States Dep't of Homeland Sec.*, 2017 WL 962420, at *3 (W.D. La. Mar. 10, 2017), and *Kumar v. Holder*, 2013 WL 6092707, at *6 (E.D.N.Y. Nov. 18, 2013), *cited in* MTD at 7, are no more helpful to it because none of those cases found section 1252(g) to bar review of challenges to unlawful detention.

F.3d at 598–99. *Sissoko v. Rocha*, 509 F.3d 947, 948 (9th Cir. 2007), *cited in* MTD at 8, involved a petitioner subject to mandatory detention because he was placed in expedited removal proceedings, while *Alvarez v. U.S. Immigration and Customs Enforcement*, 818 F.3d 1194, 1203–05 (11th Cir. 2016), *cited in* MTD at 8, held that petitioner's challenge to "ICE's decision to lodge a detainer against him" was barred by (g), it also found that (g) did not preclude his challenge to ICE's legal authority to detain him post-final order, where "removal was not reasonably foreseeable."

Finally, the government's reliance on the unpublished opinion in *Saadulloev v. Garland*, 2024 WL 1076106 (W.D.Pa. Mar. 12, 2024), *cited in* MTD at 8, is meaningfully distinguishable because it involved a different detention statute. Saadulloev was subject to detention under 8 U.S.C. § 1225(b)(2) ("an alien who is an applicant for admission . . . *shall* be detained . . .")(emphasis added) whereas Mr Mahdawi was detained pursuant to 8 U.S.C. § 1226(a) ("an alien *may* be arrested and detained pending a decision on whether [he] is to be removed . . .")(emphasis added). Thus, *Saadulloev* does not apply here.

### 2. 8 U.S.C. §§ 1252(a)(5) and (b)(9)

The Second Circuit has similarly found that the government is unlikely to show that this Court's jurisdiction over Mr. Mahdawi's unlawful detention claims is barred by 8 U.S.C. §§ 1252(a)(5) and (b)(9). Section 1252(a)(5) "bars district court review 'of an order of removal,' but no order of removal is at issue here." *Mahdawi*, 136 F.4th at 453. Section 1252(b)(9) requires claims "arising from any action taken or proceeding brought to remove an alien from the United States" be raised "only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). However, "the very text of § 1252(b) sets out requirements only '[w]ith respect to review of an order of removal under subsection (a)(1).'" *Öztürk II*, 136 F.4th at 399 (citing 8 U.S.C. § 1252(b))). Again, "[n]o order of removal is at issue here." *Id*.

The government claims that the decision to detain Mr. Mahdawi is "inextricably intertwined"

with removal. MTD at 11. But the Second Circuit found this argument unlikely to succeed as well, noting that Mr. Mahdawi's "unlawful detention claims may be resolved without affecting pending removal proceedings." *Mahdawi*, 136 F.4th at 452. This follows established Supreme Court precedent explaining that "the applicability of 1252(b)(9) turns on whether the legal questions that we must decide 'aris[e] from' the actions taken to remove" noncitizens, and construing that phrase narrowly to avoid the "extreme" result of rendering claims of "excessive detention" "effectively unreviewable." *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018); *see also Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (finding 1252(b)(9) did not preclude review of detention challenge); *Johnson v. Guzman Chavez*, 594 U.S. 523, 533 n.4 (2021) (same); *Mahdawi*, 136 F.4th at 452 ("Construing an independent constitutional challenge to detention as necessarily implying a challenge to removal would lead to what *Jennings* called an 'absurd' result." (citing 583 U.S. at 293)).

From *Jennings*, the Third Circuit derived a simple "now-or-never" principle that makes clear that 1252(b)(9) does not apply here: "When a detained alien seeks relief that a court of appeals cannot meaningfully provide on petition for review ["PFR"] of a final order of removal, § 1252(b)(9) does not bar consideration by a district court." *E.O.H.C., v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 180 (3d Cir. 2020). The Second Circuit has approached 1252(b)(9) in the same way. *See Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (explaining that "whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking," and noting that habeas jurisdiction exists where petitioner "challenged only the constitutionality of the arrest and detention" (citations omitted)).

This "now or never" principle applies to Mr. Mahdawi in at least two respects. First, as the Second Circuit explained, Mr. Mahdawi's "core argument is that his free speech and due process rights [were] being violated, *now*." *Mahdawi*, 136 F.4th at 452. By subjecting him to retaliatory detention, the government was chilling his speech and that of others who similarly seek to speak out

in support of Palestinian rights. Second, the government was also unlawfully depriving him of his physical liberty. If Mr. Mahdawi were forced to wait until the end of a lengthy PFR process to raise his detention challenges, "relief [would] come too late to redress the harm," *E.O.H.C.*, 950 F.3d at 186–if it were able to redress the harm at all[5] –rendering his constitutional claims "effectively unreviewable" and accomplishing the unlawful object of his detention. *See Jennings*, 583 U.S. at 293.

The authorities the government cites offer no support for its motion. To start, none of the cases involved challenges to unconstitutional detention. MTD at 10–11; *see Calcano-Martinez v. INS*, 232 F.3d 328, 330 (2d Cir. 2000), *cited in* MTD at 10 (petitions for review of final orders of removal); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1033 (9th Cir. 2016), *cited in* MTD at 10 (right to counsel at government expense in removal proceedings); *Ruiz v. Mukasey*, 552 F.3d 269, 271 (2d Cir. 2009), *cited in* MTD at 10 (challenge to denial of I-130 petition); *Xiao Ji Chen v. USDOJ*, 434 F.3d 144, 148 (2d Cir. 2006), *cited in* MTD at 10 (petition for review of a final order of removal); *Rosario v. Holder*, 627 F.3d 58, 60 (2d Cir. 2010) *cited in* MTD at 11 (same); *Delgado*, 643 F.3d at 54–55, *cited in* MTD at 11 (indirect challenge to reinstated order of removal). *Aguilar v. ICE*, 510 F.3d 1 (1st Cir. 2007), *cited in* MTD at 10, 14, actually *supports* Petitioner, holding that "district courts retain jurisdiction over challenges to the legality of detention in the immigration context." *Aguilar*, 510 F.3d at 11 (citing *Hernandez v. Gonzales*, 424 F.3d 42, 42 (1st Cir. 2005)). And the dicta from *Jennings* that the government seizes upon, 583 U.S. 281 (2018), *cited in* MTD at 11, 14, 18–19, does not support their position but rather cuts the other way. *See Mahdawi*, 136 F.4th at 452–53. Finally, the government's citation to *Massieu v. Reno*, 91 F.3d 416 (3d Cir. 1996), MTD at 12, is inapposite. *Massieu* did not involve a challenge to detention, but rather an injunction against "further deportation

---

[5] Indeed, constitutional challenges to *detention* cannot be heard on a petition for review of a *removal order*. And even if such challenges could somehow be heard on a PFR, the Immigration Judge ("IJ") and Board of Immigration Appeals ("BIA") do not have jurisdiction to decide constitutional issues, nor can they develop a sufficient factual record for review by the court of appeals. *See generally Öztürk*, 136 F.4th at 400–401. This is not "meaningful review." *Jennings*, 583 U.S. at 321.

proceedings against plaintiff under" the relevant statutory provision. *Massieu*, 91 F.3d at 417.[6]

### 3.   8 U.S.C. § 1226(e)

8 U.S.C. § 1226(e) does not bar Mr. Mahdawi's detention claims either. MTD at 14. As the Second Circuit held in *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020), § 1226(e) does not "limit habeas jurisdiction over constitutional claims or questions of law." *Id*. Indeed, the Supreme Court has observed that § 1226(e) "contains no explicit provision barring habeas review" at all. *Demore v. Kim*, 538 U.S. 510, 517 (2003). The government seeks to distinguish *Velasco Lopez* because the petitioner there did not challenge their "initial detention," MTD at 11, but the Second Circuit's jurisdictional reasoning in no way turned on that fact.

### 4.   8 U.S.C. § 1252(a)(2)(B)(ii)

Finally, the government argues that 8 U.S.C. § 1252(a)(2)(B)(ii) "bars judicial review of discretionary decisions including bond determinations under § 1226(a)." MTD at 19. But Petitioner does not seek review of a "bond determination." He asks this Court to exercise its inherent habeas authority to order release *pendente lite*, *see Mapp*, 24 F.3d at 223, and ultimately to hold his detention unlawful. Moreover, § 1252(a)(2)(B)(ii) applies only to those decisions where Congress has "set out the Attorney General's discretionary authority in the statute." *Kucana v. Holder*, 558 U.S. 233, 247 (2010); *accord Mahdawi*, 136 F.4th at 453. Here, Petitioner challenges his unlawful detention in retaliation for engaging in protected speech. Such challenges to "the extent of the [government's]

---

[6] By the government's own characterization, *Ali v. Barr*, 464 F. Supp. 3d 549 (S.D.N.Y. 2020), *Nikolic v. Decker*, 2019 WL 5887500 (S.D.N.Y. Nov. 12, 2019), and *Selvarajah v. USDHS*, 2010 WL 4861347 (S.D.N.Y. Nov. 30, 2010) do not involve challenges to unconstitutional detention. And in *Taal v. Trump*, the petitioner sought a "temporary restraining order enjoining his removal proceedings." No. 3:25-CV-335, 2025 WL 926207, at *2–3 (N.D.N.Y. Mar. 27, 2025). The court found in three short paragraphs that the plaintiff had not established jurisdiction sufficient to warrant a TRO. *Id*. Critically, in analyzing (b)(9) and (g) the court relied on the plaintiffs' concession that "Taal will have the opportunity to raise his constitutional challenges before the immigration courts." *Id*. Mr. Mahdawi makes no such concession.

authority under the" Constitution are "not a matter of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *see also Xi v. Haugen*, 68 F.4th 824, 829 (3d Cir. 2023) ("the Government has no discretion to violate the Constitution"). Section 1226(a) does not give the government authority to subject Mr. Mahdawi to unconstitutional detention. Thus, 1252(a)(2)(B)(ii) does not bar review.

**B.  The INA does not bar Mr. Mahdawi's challenges to the Rubio Determination or the Policy.**

The government argues that this Court lacks jurisdiction to review and vacate the Rubio Determination and the Policy of "retaliat[ing against] and punish[ing] noncitizens for their speech and expressive conduct related to Palestine and Israel." Compl. at ¶ 4. The government is wrong.

**1.  8 U.S.C. § 1252(g)**

Turning first to 8 U.S.C. § 1252(g), that provision clearly does not deprive the Court of jurisdiction to vacate the Rubio Determination or the Policy.

First, with respect to the Rubio Determination, by its terms, § 1252(g) applies only to "the decision or action **by the Attorney General** to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added). Statutory references to the Attorney General can include the Secretary of Homeland Security because "the Homeland Security Act of 2002 mandates that references to the Attorney General are deemed to include DHS where, as here, the relevant agency functions have been transferred from the Department of Justice to DHS." *Mahdawi*, 136 F.4th at 450 n.2 (quoting *Shabaj v. Holder*, 718 F.3d 48, 51 n.3 (2d Cir. 2013); *see also* 6 U.S.C. § 557. There is no statutory authority, however, for reading a reference to the Attorney General to include the Secretary of State or the Department of State. A decision or action by the Secretary of State thus cannot be covered by § 1252(g), particularly given the "longstanding principles of statutory interpretation requiring Congress to speak clearly and specifically when it wishes to deprive the federal courts of jurisdiction." *Mahdawi*, 136 F.4th at 449.

Second, the Rubio Determination is not an action "to commence proceedings, adjudicate

cases, or execute removal orders." Instead, it is at most a *predicate to* the commencement of removal proceedings, and not the commencement of those proceedings themselves, which requires that DHS exercise its prosecutorial discretion and file a Notice to Appear in immigration court. *See Arizona v. USA*, 567 U.S. 387, 396 (2012) ("A principal feature of the removal system is the broad discretion exercised by immigration officials"); *Khalil v. Joyce*, No. 25-CV-01963 (MEF)(MAH), 2025 WL 1232369, at *57–58 (D.N.J. Apr. 29, 2025), *motion to certify appeal denied*, No. 25-CV-01963 (MEF)(MAH), 2025 WL 1262349 (D.N.J. May 1, 2025); *see also Tazu*, 975 F.3d 292, 298 (1252(g) does not apply to claims "challen[ing] Government actions taken *before* the Attorney General tried to execute [any] order") (emphasis added); *Kwai Fun Wong v. United States*, 373 F.3d 952, 965 (9th Cir. 2004) (finding 1252(g) does not reach such challenges)). While the Rubio Determination may have been necessary for the Attorney General to commence proceedings under the Foreign Policy Ground, the Determination did not itself commence proceedings. The DHS Secretary had to take a separate step, exercising her own discretion, to begin proceedings. Mr. Mahdawi's challenge to the "very authority" behind the Attorney General's decision to commence proceedings does "not implicate[]" section 1252(g). *Garcia v. Att'y Gen.*, 553 F.3d 724, 729 (3d Cir. 2009); *see also Madu v. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) (explaining that 1252(g) "does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions").

Third, when analyzing 1252(g), courts have routinely distinguished between a challenge to specific removal proceedings against a particular petitioner, and a broader challenge to unconstitutional agency policies or practices. *See, e.g.*, *DHS v. Regents of the Univ. of California*, 51 U.S. 1, 19 (2020) ((g) did not preclude judicial review of a challenge to government's DACA recission policy, which "revoke[d] a deferred action program" and could be cast as an initial step in the commencement of removal proceedings); *Catholic Soc. Servs., Inc. v. I.N.S.*, 232 F.3d 1139 (9th Cir. 2000) (en banc) (finding (g) did not bar review of challenge to policy that led to denial of

immigration relief, although such denial could lead to decision to commence removal proceedings). Nor does section 1252(g) bar review of challenges to the legal authority for the Executive's actions. *See, e.g., Madu v. U.S. Att'y. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) (explaining that (g) "does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions"); *Arce v. United States*, 899 F.3d 796, 801 (9th Cir. 2018) (similar); *Garcia v. Att'y Gen.*, 553 F.3d 724, 729 (3d Cir. 2009); *Calderon v. Sessions*, 330 F. Supp. 3d 944, 955 (S.D.N.Y. 2018) (challenge to ICE's "legal authority" to execute removal reviewable in habeas); *Ali v. Mukasey*, 524 F.3d 145, 150 (2d Cir. 2008) (similar).

For these reasons, *AADC* does not dispose of Mr. Mahdawi's challenge to the Rubio Determination or Policy, as the government seems to suggest. MTD at 5. There, the Supreme Court held that 1252(g) barred the plaintiffs' claims that the Attorney General selectively prosecuted them. 525 U.S. at 478. But Mr. Mahdawi does not challenge the Attorney General's decision to commence proceedings; he is challenging a retaliatory Policy and Determination by the Secretary of State. Moreover, unlike in *AADC*, Mr. Mahdawi is not an "alien unlawfully in the country" whom the government has selectively targeted for removal on additional terrorism-related grounds. *Id*. 491-92. He is an LPR whom the government has attempted to render removable via the retaliatory acts challenged here. Thus, to the extent there is any ambiguity as to whether 1252(g) applies, it cannot be construed to bar Mr. Mahdawi's multiple constitutional claims.

Finally, even if 1252(g) applied—which it does not—Mr. Mahdawi's claims fall under *AADC*'s exception for "outrageous" conduct for substantially the same reasons the Second Circuit identified in *Ragbir v. Homan*: he is not in violation of any immigration laws, he is a LPR with a strong interest in avoiding selective detention and deportation, he is being openly retaliated against for protected expression, and the government's admission that he was targeted for the views he expressed obviates the need for any sensitive inquiry into the "real" reasons for his removal. 923 F.3d

53, 69–73 (2d Cir. 2019), *cert. granted, judgment vacated on other grounds sub nom by Pham v. Ragbir*, 141 S. Ct. 227 (2020).

### 2.  8 U.S.C. §§ 1252(a)(5) and (b)(9)

The Court's jurisdiction to review the Rubio Determination and Policy is also not restricted by 8 U.S.C. §§ 1252(a)(5) or 1252(b)(9). As an initial matter, again, "[n]o order of removal is at issue here." *Mahdawi*, 136 F.4th at 452. That clearly renders § 1252(a)(5) inapplicable. And, given that all of § 1252(b) relates to review of removal orders, it renders § 1252(b)(9) inapplicable as well. *Mahdawi*, 136 F.4th at 451-52. Moreover, even if § 1252(b)(9) applied where no order of removal yet exists, it would not apply here.

First, with respect to the Rubio Determination, an action by the Secretary of State necessarily is not "any action taken or proceeding brought to remove an alien from the United States under this subchapter," 8 U.S.C. § 1252(b)(9), because the Secretary of State has no authority to remove a noncitizen from the United States on his own. *See* 8 U.S.C. § 1104(a) (describing powers, duties, and functions of Secretary of State). The Secretary of State's predicate determination of U.S. foreign policy may play a role in a removability decision made by the Attorney General under 8 U.S.C. § 1227(a)(4)(C), but the Secretary of State's own authority does not extend to removal of a noncitizen. Indeed, construing § 1252(b)(9) to channel claims against the Secretary of State would lead to absurd results. The purpose of (b)(9) is to consolidate those legal claims to which it applies into the petition for review of a removal order. *Aguilar*, 510 F.3d at 11 ("1252(b)(9) is a judicial channeling provision, not a claim-barring one"). In such a petition for review, by statute, "[t]he respondent is the Attorney General," 8 U.S.C. § 1252(b)(3)(A), which can sometimes refer to the Secretary of Homeland Security, *see Mahdawi*, 136 F.4th at 450 n.2; *Elgharib*, 600 F.3d at 606-607. But there is no similar authority for construing "Attorney General" to include the Secretary of State. The Secretary of State is quite literally not a party to the immigration proceeding into which § 1252(b)(9) channels those

14

issues to which it applies. Thus, it would make no sense for a decision or action of the Secretary of State to be subject to § 1252(b)(9), as this would channel review of the decision into a proceeding not involving the decision-maker.

Second, as explained above, *supra* Section I(A)(2), the Supreme Court has narrowly interpreted (b)(9) to avoid "extreme" results that would render valid claims "effectively unreviewable." *Jennings*, 583 U.S. at 293. As the Third Circuit summarized, after *Jennings* the rule is simple: When a petitioner seeks "relief that courts cannot meaningfully provide alongside review of a final order of removal," § 1252(b)(9) does not apply. *E.O.H.C.*, 950 F.3d at 186; *see also Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007) (explaining that reading 1252(b)(9) to cover claims that "cannot be raised efficaciously" on a petition for review would effectively bar "any meaningful judicial review"); *Khalil*, 2025 WL 1232369, at *21 ("whether Section 1252(b)(9) allows a federal district court to hear a claim that has been brought to it depends on whether the claim could get 'meaningful review' if federal court review is delayed out into the future").

Here, Mr. Mahdawi does not challenge any aspect of his removal proceedings that could receive meaningful review through the petition for review ("PFR") process. Instead, he seeks to vacate the Rubio Determination and Policy that are *currently* chilling his speech and that of countless others. "[C]ourts cannot meaningfully provide" review of these claims "alongside review of a final order of removal" and, even assuming they could, "relief may come too late to redress" the harm. *E.O.H.C.*, 950 F.3d at 186 (citing *Aguilar*, 510 F.3d at 11).

Mr. Mahdawi's challenge to the Rubio Determination and Policy would not receive meaningful review in the administrative process because neither the IJ nor the BIA can consider constitutional claims or develop an adequate factual record for consideration by the court of appeals on a PFR. *See generally Khalil*, 2025 WL 1232369, at *29-38; *United States v. Gonzalez–Roque*, 301 F.3d 39, 47 (2d Cir. 2002) (explaining that "constitutional claims lie outside the BIA's jurisdiction");

*Tefel v. Reno*, 972 F. Supp. 608, 615–16 (S.D. Fla. 1997) (IJ cannot develop record for Court of Appeals on issues that IJ cannot hear); *Matter of Ruiz-Massieu*, 22 I&N Dec. 833, 843 (BIA 1999) (treating Secretary of State's "reasonable determination" as "conclusive evidence of respondent's deportability"). "[C]ramming judicial review of those questions into the review of final removal orders would be absurd." *Jennings*, 583 U.S. at 293.

Moreover, review of the constitutional claims in the first instance by a court of appeals–which would follow many months or years of proceedings before an immigration judge and the BIA–would come far too late. Mr. Mahdawi's First Amendment rights "are being violated, ***now***," and the harms flowing from that violation are accruing ***now*** through the chilling of his and others' speech. *Mahdawi*, 136 F.4th at 452 (emphasis in original); *see also Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality opinion) ("[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). If the only way to challenge the Rubio Determination and Policy were to first experience the harm of retaliatory immigration proceedings, the government would be able to effectuate its unconstitutional policy and chill speech on a matter of vital public concern. Indeed, it is precisely due to this First Amendment harm that 1252(b)(9) does not channel Mr. Mahdawi's claims. "[A] period of delay while this case is pending before the immigration courts, knowing that there will be little or nothing to show for it . . does not work" because, as "the Supreme Court has held over and over again, in numerous contexts, [ ] meaningful review of First Amendment claims generally means rapid, prioritized review." *Khalil*, 2025 WL 1232369, at *30; *id*. at *47-51 (discussing Supreme Court cases showing that "when it comes to here-and-now First Amendment injuries, the law requires a faster pace"). Section 1252(b)(9) "requires consideration of whether later federal court review would still be 'meaningful' enough." *Id*. at *50. "Here, it would not be." *Id*. Thus, 1252(b)(9) does not channel Mr. Mahdawi's claims.

Finally, even assuming that 1252(b)(9) applies here, the First Amendment itself would still

require this Court's immediate review of Mr. Mahdawi's claims. *See Khalil*, 2025 WL 1232369 at *47-51 (discussing contexts where the First Amendment requires expeditious judicial review). The Supreme Court has yet to define when the First Amendment requires immediate judicial intervention in federal administrative proceedings. However, as Justice Ginsburg explained in her concurrence in *AADC*, the cases addressing federal injunctions that stop state proceedings and related case law provide a "helpful framework." 525 U.S. at 492–93 (Ginsburg, J., concurring) (discussing *Dombrowski v. Pfister*, 380 U.S. 479 (1965); *Younger v. Harris*, 401 U.S. 37, 47–53 (1971); *Oestereich v. Selective Serv. System Local Bd. No. 11*, 393 U.S. 233 (1968)). Applied here, those cases "suggest[] that interlocutory intervention in [immigration] proceedings would be in order, notwithstanding a statutory bar, if the [agency] acts in bad faith, lawlessly, or in patent violation of constitutional rights." *AADC*, 525 U.S. at 493. Moreover, this test would require "demonstration of a strong likelihood of success on the merits." *Id*.

Mr. Mahdawi readily meets that test here. As set forth in his Petition, the government has targeted Mr. Mahdawi—pursuant to an unconstitutional Policy that explicitly seeks to punish and censor protected speech, including through the Rubio Determination—in order to retaliate against him for his protected speech and chill the speech of other individuals who share his views. (Dkt. No. 1 at ¶¶ 21-68.) As this Court already found in its bail decision, Mr. Mahdawi has shown a strong likelihood of prevailing on his First Amendment claim and has established that the government has acted in patent violation of his constitutional rights. *See Mahdawi v. Trump*, ___ F.Supp.3d ___, Case No. 2:25-cv-389, 2025 WL 1243135, at *8-11 (D.Vt. April 30, 2025). Thus, even assuming 1252(b)(9) applies to some of Mr. Mahdawi's claims, the First Amendment requires this Court's immediate review to remedy the ongoing injury to his speech rights. Any review after the completion of administrative proceedings could never remedy the harm the government inflicts—that of chilling political speech, and thereby irrevocably distorting public discourse—today.

17

## II.    THE POLITICAL QUESTION DOCTRINE DOES NOT PRECLUDE VACATUR OF THE RUBIO DETERMINATION.

In the absence of any applicable specific statutory bar on jurisdiction, the government attempts to invoke the political-question doctrine. *See* MTD at 14-16. That doctrine does not displace judicial review here.

The political question doctrine is a "narrow exception" to courts' presumptive exercise of jurisdiction. *Zivotofsky v. Clinton*, 566 U.S. 189, 195 (2012). As the Supreme Court has made clear, "it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance." *Baker v. Carr*, 369 U.S. 186, 211 (1962). Rather, it is an "obligation of the federal courts to exercise the jurisdiction given them," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), even in cases they "would gladly avoid," *Zivotofsky*, 566 U.S. at 194. Here, Mr. Mahdawi does not challenge the wisdom of a discretionary decision, but the legality of the executive's action as against long-standing constitutional principles; thus courts "will not stand impotent before an obvious instance of a manifestly unauthorized exercise of power." *Baker*, 369 U.S. at 217.

As the government has acknowledged, "[a] nonjusticiable political question occurs when "there is 'a textually demonstrable constitutional commitment of the issue to a coordinate political department[] or a lack of judicially discoverable and manageable standards for resolving it.'" (Dkt. No. 25 at 14-15) (quoting *Nixon v. United States*, 506 U.S. 224, 228 (1993), and *Baker v. Carr*, 369 U.S. at 217). There is no constitutional commitment to a political department of the question of whether to violate the First or Fifth Amendments by retaliating against constitutionally protected speech, either through implementation of an unconstitutionally vague statute or in any other way. *See, e.g.*, *Planned Parenthood Federation of America*, *Inc. v. Agency for Int'l Development*, 838 F.2d 649, 651-652, 655-656 (2d Cir. 1988) (holding that First Amendment challenge to clause requiring funding recipients to certify that they did not promote abortion did not present a non-justiciable political

18

question). Nor is there any lack of judicially discoverable and manageable standards for resolving Petitioner's various constitutional claims. Rather, straightforward constitutional jurisprudence creates "judicially manageable standards" to adjudicate violations of the First and Fifth Amendments. *Baker*, 369 U.S at 217; *see also*, *e.g.*, *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995); *Connick v. Myers*, 461 U.S. 138, 145 (1983); *Buckley v. Valeo*, 424 U.S. 1, 41-44 (1976); *Bridges v. Wixon*, 326 U.S. 135, 148 (1945); *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015); *Khalil v. Trump,* No. 25-CV-01963, 2025 WL 1514713, at *8-45 (D.N.J. May 28, 2025) (applying vagueness doctrine and concluding that "[t]he Petitioner is likely to succeed on the merits of his claim that Section 1227 is unconstitutionally vague as applied to him through the Secretary of State's determination"). Even in the context of a highly sensitive inter-branch dispute about Jerusalem, the Supreme Court recently affirmed that applying constitutional law to a challenge to executive authority is "a familiar judicial exercise." *Zivotofsky*, 566 U.S. at 196. Applying well-established case law under the First Amendment and the Due Process Clause is no different.

With respect to the non-delegation doctrine, *see* Dkt. No. 1 at ¶¶ 83-85, "the [Supreme] Court has repeatedly adjudicated separation-of-powers claims brought by people acting in their individual capacities." *U.S. v. Munoz-Flores*, 495 U.S. 385, 394 (1990) (citing *Mistretta v. United States*, 488 U.S. 361 (1989)). Moreover, with respect to the claim of violation of the non-delegation doctrine, Dkt. No. 1 at ¶¶ 82-85, the government weakens, rather than strengthens, its case when it argues that "[t]here is simply no manageable standard on what constitutes 'potentially serious adverse foreign policy consequences.' 8 U.S.C. § 1227(a)(4)(C)(i). Nor is there a manageable standard on what constitutes a 'compelling foreign policy interest.' 8 U.S.C. § 1227(a)(4)(C)(ii)." (Dkt. No. 25 at 16.) Petitioner's First Amendment claim does not request the Court to assess what foreign policy consequences might be serious or what foreign policy interests might be compelling, but asks the Court only to prevent government retaliation for constitutionally protected speech, based on an

unconstitutionally vague statute to boot. The government's concession of lack of a manageable standard is, however, relevant to Petitioner's claim that Congress has attempted to delegate authority to the executive without sufficient guidance and standards to confine the exercise of that authority.

## CONCLUSION

Respondents' motion to dismiss should be denied. This Court has jurisdiction over this case, including all aspects of Petitioner's prayer for relief.

Dated: June 4, 2025                    Respectfully submitted,
     S. Woodbury, Vermont

/s/ Lia Ernst                          Andrew B. Delaney
Monica H. Allard                       **MARTIN DELANEY & RICCI LAW**
Hillary A. Rich                        **GROUP**
**ACLU FOUNDATION OF**                 100 North Main Street
**VERMONT**                            Barre, Vermont 05641
P.O. Box 277                           andrew@mdrvt.com
Montpelier, VT 05601                   P: 802-479-0568
P: (802) 223-6304
lernst@acluvt.org


Nathan Freed Wessler*                  Luna Droubi*
Brett Max Kaufman*                     Matthew Melewski*
Brian Hauss*                           **BELDOCK LEVINE & HOFFMAN**
Esha Bhandari*                         **LLP**
Michael Tan*                           99 Park Avenue, PH/26th Floor
Noor Zafar*                            New York, New York 10016
Sidra Mahfooz*                         P: (212) 277-5875
**AMERICAN CIVIL LIBERTIES**           F: (212) 277-5880
**UNION FOUNDATION**                   ldroubi@blhny.com
125 Broad Street, 18th Floor           mmelewski@blhny.com
New York, NY 10004
P: (212) 549-2500
nwessler@aclu.org

**CLEAR PROJECT**
**MAIN STREET LEGAL SERVICES, INC.**
Ramzi Kassem***
Naz Ahmad***
Mudassar Hayat Toppa***
Shezza Abboushi Dallal*
CUNY School of Law
2 Court Square, 5th Floor
Long Island City, NY 11101
Tel.: (718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu
shezza.dallal@law.cuny.edu

Cyrus D. Mehta*
David A. Isaacson
**CYRUS D. MEHTA & PARTNERS
PLLC**
One Battery Park Plaza, 9th Floor
New York, New York 10004
cm@cyrusmehta.com
disaacson@cyrusmehta.com
P: 212-425-0555
F: 212-425-3282

*Attorneys for Petitioner*

*Pro Hac Vice

***Pro Hac Vice application forthcoming