## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

MOHSEN MAHDAWI,

*Petitioner*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States; PATRICIA HYDE, in her official capacity as Acting Boston Field Office Director; Vermont Sub-Office Director of Immigration and Customs Enforcement; TODD M. LYONS, in his official capacity as Acting Director for U.S. Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; MARCO RUBIO, in his official capacity as Secretary of State; and PAMELA BONDI, in her official capacity as Attorney General of the United States,

*Respondents*.

Case No. 2:25-cv-00389

## MOTION FOR LIMITED DISCOVERY

Petitioner Mohsen Mahdawi respectfully seeks leave to obtain targeted discovery from Respondents—specifically, documents and testimony concerning the policy and decisions underlying his detention—because his petition sets forth specific allegations of unconstitutional retaliation. Good cause exists, and due process requires this discovery to adequately develop the facts supporting his claims.

## BACKGROUND

On April 14, 2025, Mr. Mahdawi, a lawful permanent resident of the United States, was

1

arrested after a scheduled naturalization interview in Vermont. Dkt. No. 54 at 5. Unbeknownst to him, two weeks earlier, Respondent U.S. Secretary of State Marco Rubio had secretly issued a memorandum, pursuant to 8 U.S.C. § 1227(a)(4)(C)(ii), declaring Mr. Mahdawi deportable for his lawful speech and associations. Dkt. No. 42-1. Upon Mr. Mahdawi's arrest, the government began what it intended to be a journey to immigration detention in Louisiana. Dkt. No. 54 at 5–6. Before that could happen, Mr. Mahdawi's lawyers filed the underlying Petition for a Writ of Habeas Corpus and sought and received a temporary restraining order enjoining Respondents from removing him from the District of Vermont or the United States. Dkt. Nos. 1, 6, 34. On April 30, 2025, this Court released Petitioner on bail pursuant to *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001), determining that his petition raised substantial claims, and that this case presented extraordinary circumstances.  Dkt. No. 54.

In his Petition, Mr. Mahdawi challenges the government's unconstitutional retaliation against him for his lawful speech protected by the First Amendment, by arresting and detaining him pursuant to a government policy to punish noncitizens for their speech and expressive conduct related to Palestine and Israel (the "Policy"). Dkt. No. 1. Under the Policy, Respondent Rubio issued determinations that particular noncitizens—including college students like Mr. Mahdawi—who protested against or criticized the Israeli government or who advocated in favor of Palestinians were, through their very presence, activities, or lawful speech inside the country, causing "potentially serious adverse foreign policy consequences for the United States" or "would compromise a compelling United States foreign policy interest." Dkt. No. 1 ¶ 4.

Mr. Mahdawi's Petition, *inter alia*, alleges that Respondents have targeted and detained him on the basis of his past protected speech, in violation of the First Amendment. The Petition also alleges that Mr. Mahdawi was detained without any legitimate government purpose, to punish him for his speech and to chill the speech of others, in violation of the Fifth Amendment's Due Process

2

Clause. Mr. Mahdawi now seeks leave from this Court to seek limited discovery from Respondents as to facts related to the Policy, the Rubio determinations, Mr. Mahdawi's detention, and other allegations in Mr. Mahdawi's Petition.

**MEMORANDUM OF LAW**

This Court should grant leave for Mr. Mahdawi to seek discovery from Respondents because the specific allegations in Mr. Mahdawi's complaint show that additional facts will likely demonstrate that Mr. Mahdawi is entitled to relief in his habeas petition.[1]

## I.      STANDARD OF REVIEW

A district court may order discovery in a habeas case upon a showing of "good cause." *Bracy v. Gramley,* 520 U.S. 899, 904 (1997); *Drake v. Portuondo*, 321 F.3d 338, 346 (2d Cir. 2003); *Pizzuti v. United States*, 809 F. Supp. 2d 164, 175–76 (S.D.N.Y. 2011).  If a Petitioner makes "specific allegations" that provide "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Bracy*, 520 U.S. at 908-09 (cleaned up); *Drake,* 321 F.3d at 345-46.

This standard is reflected in Rule 6 of the Rules Governing Section 2254 and the Rules Governing Section 2255 Proceedings in the United States District Courts ("Habeas Rules"). Rule 6, 28 U.S.C.A. foll. § 2254; Rule 6, 28 U.S.C.A. foll. § 2255. Although the Habeas Rules specifically govern § 2254 and § 2255 cases, they also provide that a district court may apply these rules "to a habeas corpus petition not covered by" them. Habeas Rules 1(b). Courts routinely apply Rule 6 in § 2241 actions. *See, e.g.*, *Razzoli v. Fed. Bureau of Prisons*, 2013 U.S. Dist. LEXIS 99257, at *3

---

[1] The discovery requests that Petitioner seeks to serve on Respondents are attached as exhibits to this motion. As mentioned, *infra*, Petitioner also reserves the right to seek leave for additional depositions and/or discovery as the case progresses.

(S.D.N.Y July 9, 2013); *Toolasprashad v. Tryon*, 2013 U.S. Dist. LEXIS 52832, *5 (W.D.N.Y. April 11, 2013); *Annamalai v. Warden*, 760 F. App'x 843, 849–50 (11th Cir. 2019); *Gomes v. U.S. Dep't of Homeland Sec.,* 559 F. Supp. 3d 8, 11-12 (D.N.H. 2021). Unlike most cases governed by the Habeas Rules, however, here there is no underlying record or previous opportunity for discovery, *see Gomes*, 559 F. Supp. at 11, making discovery all the more important.

## II.    THERE IS GOOD CAUSE FOR DISCOVERY

Mr. Mahdawi has made specific allegations that demonstrate he is likely entitled to relief. He should now be granted discovery to prove those allegations. The government's outrageous conduct and prior statements provide further evidence that factual discovery will support Mr. Mahdawi's claims.

### A.    Mr. Mahdawi Has Made Specific Allegations That Provide Reason to Believe The Requested Discovery Will Support His Habeas Petition.

Mr. Mahdawi has alleged that the government has adopted a Policy to punish noncitizens for their speech and expressive conduct, and that the government specifically targeted and detained Mr. Mahdawi on the basis of activities protected by the First Amendment. The government detained Mr. Mahdawi, he alleges, to punish him for his speech and chill other speech, in violation of the First Amendment, and without due process in violation of the Fifth Amendment. These specific allegations, if proven, will demonstrate that Mr. Mahdawi should prevail on his First and Fifth Amendment claims.

In granting Mr. Mahdawi's motion for release under *Mapp,* 241 F.3d, this Court determined that Mr. Mahdawi has raised a "substantial claim" of First Amendment retaliation and Fifth Amendment due process violations. Dkt. No. 54 at 20, 22-23. This alone demonstrates the requisite "good cause" necessary to grant discovery. *See Williams v. Menifee*, 331 F. App'x. 59, 61 (2d Cir. 2009) (suggesting that "good cause" can be "based on the relative strength of [petitioner's]

constitutional claims"); *Salvagno v. Dir.*, 2017 U.S. Dist. LEXIS 233034, at *3 (D. Conn. 2017) ("Good cause may be found when a petition for habeas corpus relief establishes a prima facie claim for relief.").

Furthermore, the nature of Mr. Mahdawi's claims suggest that additional facts are likely to support Mr. Mahdawi's entitlement to relief. The Court has explained the factual showing Mr. Mahdawi will have to make to prevail on his First and Fifth Amendment claims. In order to succeed on his First Amendment claim, the Court explained that Mr. Mahdawi must prove "that the government detained him in retaliation for his protected speech or to chill the speech of others." Dkt. No. 54 at 19. He will succeed on his Fifth Amendment claim "if he demonstrates *either* that the government acted with a punitive purpose *or* that it lacks any legitimate reason to detain him." *Id.* at 22 (emphasis in original).

Each of these conclusions that Mr. Mahdawi must prove or demonstrate relates to the *intent* or *motive* of the government in arresting and detaining him and/or the *evidentiary basis* for Mr. Mahdawi's detention (or lack thereof). These are inherently fact-based inquiries, and Respondents should be obligated to produce discovery related to these issues because, after such fact discovery, Mr. Mahdawi may be able to demonstrate that he is entitled to relief. For example, additional facts may provide further support to the allegation that Mr. Mahdawi was targeted specifically because of his protected speech, and that he was detained to punish him or to chill the speech of others. Additional factual discovery may show that the government adopted the Policy to suppress the speech of noncitizens and detain them without any legitimate government purpose.

### B. Respondents' Conduct And Statements Provide Reason to Believe The Requested Discovery Will Support Petitioner's Habeas Petition

Mr. Mahdawi's limited discovery requests, *see* Exhibits 1-5, seek to expand on publicly available evidence supporting his claims. As Mr. Mahdawi explained in his Petition, and as this

Court recognized, there is already public evidence "of retaliatory intent." Dkt. No. 54 at 20. This evidence will help fully develop the facts, bolstering Mr. Mahdawi's ability to demonstrate that he is entitled to relief. *See Drake*, 321 at 346 (identifying prosecutorial behavior as sufficient evidence to grant discovery on whether prosecutors knew of perjured testimony).

For example, Executive Orders 14161 and 14188 explicitly target the content and viewpoint of noncitizens' speech. Section 2 of Executive Order 14161 directs Respondents to create a list of noncitizens to be deported. Exec. Order No. 14161, __ C.F.R. __, Sec. 2(b)-(c) (2025) ("the Secretary of Homeland Security shall take immediate steps to exclude or remove that alien"). Executive Order 14188's accompanying fact sheet states the government's intent to "punish anti-Jewish racism in leftist, anti-American colleges and universities" and to deport "Hamas-sympathisers on college campuses."[2] To comply with these policies, Respondents were directed to "identify" individual noncitizens, "submit" reports, and "recommend" further actions, all of which likely generated discoverable information.

Respondents should be obligated to produce discovery related to and derived from these Executive Orders because they explicitly state a Policy of targeting and punishing noncitizens like Mr. Mahdawi because of their constitutionally protected speech. Such discovery will likely show that Mr. Mahdawi is entitled to relief because he was targeted specifically because of his protected speech, and that he was detained without any legitimate government purpose, but rather to punish him and to chill the speech of noncitizens.

Prior to and since the presidential election, Respondents have repeatedly stated, in news reports, public statements, and on social media, their intent to target, detain, and deport noncitizens,

---

[2] "Fact Sheet: President Donald J. Trump Takes Forceful and Unprecedented Steps to Combat Anti-Semitism," The White House (Jan. 30, 2025), available at https://www.whitehouse.gov/fact-sheets/2025/01/fact-sheet-president-donald-j-trump-takes-forceful-and-unprecedented-steps-to-combat-anti-semitism/.

specifically students, for speech the government does not like. For example, speaking in reference to Palestine-related protests, President Trump told donors: "Any student that protests, I throw them out of the country." Dkt. No. 1 ¶ 32. On social media site X, Secretary of State Marco Rubio wrote that the Trump administration "will be revoking the visas and/or green cards of Hamas supporters in America so they can be deported." Dkt. No. 1 ¶ 44. In a press conference on March 12, 2025, Secretary of State Rubio stated, "if you tell us . . . I intend to come to your country as a student, and rile up all kind of anti-Jewish, anti-semitic activities, and "if you end up having a green card . . . we're going to kick you out." Dkt. No. 1 ¶ 48. These statements strongly suggest that Respondents discussed, made plans, solicited information, created lists and internal reports, and sought and received directives regarding green card and visa holders whose speech the government disfavors. That information will likely demonstrate that Mr. Mahdawi is entitled to relief, and the Court should order discovery accordingly.

The Rubio Memorandum filed by Respondents shows that Respondents possess facts that will likely demonstrate that Mr. Mahdawi is entitled to relief. The memorandum explains that the basis of the determination under INA § 237(a)(4)(C) is Mr. Mahdawi's "past, current or expected beliefs, statements, or associations that are otherwise lawful." Dkt. No. 42-1. In other words, First Amendment-protected activity. This also forms the basis of the Notice to Appear and the I-213. Dkt. No. 19-2. The Rubio Memorandum further provides that this determination is based on "information provided by DHS/ICE/HSI," and it includes a list of "[a]ttachments," including a "DHS Letter on Mohsen Mahdawi" and an "HSI Subject Profile of Mohsen Mahdawi," but those attachments have not been filed by the government in this case. Dkt. No. 42-1. Respondents should be ordered to disclose "the past, current or expected beliefs, statements, or associations" and the "information provided by DHS/ICE/HSI" (including the identified attachments to the Rubio Memorandum) because that information represents the factual basis for Mr. Mahdawi's detention and is likely to

further show that he is entitled to relief. *See* Exhibit 1 at Doc. Demand No. 3. Petitioner should also have the opportunity to question Respondent Rubio directly about the basis for and motivations behind his determinations. *See* Exhibit 2.

Other facts that support a finding of improper retaliatory motive will likely be elucidated through discovery. For example, the speed with which Respondents attempted to transfer Petitioner out of Vermont on a commercial flight to Louisiana, *see* Dkt. No. 54 at 5–6, is highly unusual; discovery will shed light on the details and motivation for the government's action. Similarly, the temporal proximity of Betar US posting on social media that "Mohsen Mahdawi is next and also on the deport list," Dkt.No. 1, ¶49, and Petitioner's arrest and detention, suggests that Betar's identification of Petitioner for his speech played a role in motivating Respondents' retaliatory action. Discovery will reveal the degree to which Respondents relied on Betar's communications and thus will bear on Petitioner's entitlement to relief. *See* Exhibit 1 at Doc. Demand No. 5; Exhibit 4 at Dep. Topic No. 4-5.

### III.    THE SCOPE OF DISCOVERY IS LIMITED TO RELEVANT INFORMATION THAT WILL SUPPORT THE ESSENTIAL ELEMENTS OF PETITIONER'S CLAIMS

The scope and extent of discovery are committed to the discretion of the district court. *Bracy,* 520 U.S. at 909. Petitioner's discovery requests, attached hereto, seek only limited and relevant information that would support the essential elements of his claims.

### A.    The Requested Discovery Supports The Essential Elements of Petitioner's Claims

Mr. Mahdawi seeks discovery to support the essential elements of his First and Fifth Amendment claims. The Court has previously identified the factual showing necessary to establish the essential elements of those claims. Dkt. No. 54 at 19-22; *supra* at Section II(A); *see Bracy,* 520 U.S. at 904 ("Before addressing whether petitioner is entitled to discovery under this Rule . . . we must first identify the 'essential elements' of that claim."). Consistent with that determination, the

attached discovery requests seek information tending to prove that: (1) the government detained Mr. Mahdawi in retaliation for his protected speech, (2) the government detained him to chill the speech of others, (3) the government acted with a punitive purpose, and/or (4) the government lacks any legitimate reason to detain him. More specifically, the discovery requests seek information concerning the Policy to punish noncitizens for their speech and expressive conduct related to Palestine and Israel, records that demonstrate Defendants' motivation and basis for invoking the Policy against Mr. Mahdawi, information related to the Rubio Memorandum, and records related to Mr. Madhawi's arrest, detention, and attempted removal from Vermont.

## B.    The Requested Discovery Is Appropriately Limited to Relevant Information

Mr. Mahdawi seeks only limited discovery regarding his detention and the Policy that is relevant and reasonable in scope. As reflected in the proposed discovery requests attached hereto, he seeks, for example, limited records mentioning him by name or A-number, records concerning the Policy to punish noncitizens for their speech and expressive conduct related to Palestine and Israel, records that demonstrate Defendants' motivation and basis for invoking the Policy against Mr. Mahdawi, and records related to his arrest, detention and attempted removal from Vermont. The discovery requests are time-limited as well, seeking records from only the last five months. He requests only one Respondent deposition and one agency deposition. (*See, e.g.*, Exhibit 1 at Doc. Demand Nos. 1–4 and Schedule B ¶ 1; Exhibits 2 and 4.)

Further, Mr. Mahdawi asks the Court to order Respondents to provide responsive documents, admissions, and information within 14 days of entry of an order permitting discovery. There is good cause to permit discovery on this timeline, as it will allow the Court to move expeditiously toward final resolution of the habeas petition, including claims of current and ongoing chilling of Mr. Mahdawi's and other noncitizens' exercise of First Amendment-protected speech and association. *See Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (applying "flexible standard

of reasonableness and good cause" to request for expedited discovery); *L.T. v. Zucker*, No. 1:21-CV-1034, 2021 WL 4775215, at *12 (N.D.N.Y. Oct. 13, 2021) (granting expedited discovery in First Amendment case under "reasonableness and good cause" standard). Additionally, the requested discovery overlaps substantially with ongoing discovery in a case involving similar claims, meaning that the additional burden on the government in complying with Petitioner's discovery requests here will be slight. *See* Order, *Am. Assoc. of Univ. Professors. v. Rubio* ("*AAUP*"), No. 25-cv-10685 (D. Mass. May 22, 2025) (Dkt. No. 98); Tr. of May 6, 2025, Hearing at 17:19–18:2, 18:23–19:2, 20:15–23, *AAUP,* No. 25-cv-10685 (Dkt. No. 87) (ordering discovery into retributive detention of Mr. Mahdawi and other noncitizens and specifying expectation that "the government . . . be absolutely fulsome in its disclosure of contemporaneous documents," including production of "every contemporaneous document that exists up and down the chain of command within the government bureaucracy that bears on [the issue of government retribution]"). Mr. Mahdawi also seeks leave to take one Respondent deposition and one 30(b)(6) agency deposition, reserving the right to seek leave to take additional depositions. (Exhibits 2 and 4.) Mr. Mahdawi asks the Court to order Respondents to complete depositions within 14 days of service of notice.

## CONCLUSION

For the foregoing reasons, the Court should find that good cause exists to grant Petitioner leave to conduct limited discovery.

Dated:        June 11, 2025                            Respectfully submitted,
              S. Woodbury, Vermont


/s/ Lia Ernst                                          _____
Monica H. Allard                                       Andrew B. Delaney
Hillary A. Rich                                        **MARTIN DELANEY & RICCI LAW**
**ACLU FOUNDATION OF VERMONT**          **GROUP**
P.O. Box 277                                           100 North Main Street
Montpelier, VT 05601                                   Barre, Vermont 05641
P: (802) 223-6304                                      andrew@mdrvt.com
lernst@acluvt.org                                      P: 802-479-0568


Nathan Freed Wessler*                                  Luna Droubi*
Brett Max Kaufman*                                     Matthew Melewski*
Brian Hauss*                                           **BELDOCK LEVINE & HOFFMAN LLP**
Esha Bhandari*                                         99 Park Avenue, PH/26th Floor
Noor Zafar*                                            New York, New York 10016
Sidra Mahfooz*                                         P: (212) 277-5875
**AMERICAN CIVIL LIBERTIES**             F: (212) 277-5880
**UNION FOUNDATION**                     ldroubi@blhny.com
125 Broad Street, 18th Floor                           mmelewski@blhny.com
New York, NY 10004
P: (212) 549-2500
nwessler@aclu.org


Ramzi Kassem***                                        Cyrus D. Mehta*
Naz Ahmad***                                           David A. Isaacson
Mudassar Hayat Toppa***                                **CYRUS D. MEHTA & PARTNERS PLLC**
Shezza Abboushi Dallal*                                One Battery Park Plaza, 9th Floor
**CLEAR PROJECT**                        New York, New York 10004
**MAIN STREET LEGAL SERVICES, INC.**     P: 212-425-0555
CUNY School of Law                                     F: 212-425-3282
2 Court Square, 5th Floor
Long Island City, NY 11101                             *Attorneys for Petitioner*
Tel.: (718) 340-4558
ramzi.kassem@law.cuny.edu                              *Pro Hac Vice
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu                            ***Pro Hac Vice application forthcoming
shezza.dallal@law.cuny.edu


11