UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

MOHSEN MAHDAWI,                  )
Petitioner,                     )
                                )
v.                              )
                                )        No. 25-cv-389
DONALD J. TRUMP, et al.         )
Respondents.                    )

**OPPOSITION TO MOTION FOR LIMITED DISCOVERY**

The Court should deny Petitioner Mohsen Mahdawi's Motion for Limited
Discovery, ECF No. 77, because the record already before the Court is sufficient for
the Court to assess the merits of Mahdawi's Petition for a Writ of Habeas Corpus
and, if there is to be discovery, it should not occur until after the government's
interlocutory appeal has been adjudicated.

**Factual and Procedural Background**

**1. Secretary of State Determination**

On March 15, 2025, Secretary of State Marco Rubio issued a Memorandum,
ECF No. 42-1, by which he informed the Secretary of Homeland Security that the
Secretary of State had determined that petitioner Mohsen Mahdawi was deportable
pursuant to section 237(a)(4)(C) of the Immigration and Nationality Act (8 U.S.C. §
1227(a)(4)(C)). That statutory provision states that an alien "shall, upon the order of
the Attorney General, be removed if the alien is within one or more of the following

1

classes of deportable aliens: . . . (i) An alien whose presence or activities in the United States the Secretary of State has a reasonable ground to believe would have potentially serious adverse foreign policy consequences for the United States is deportable." When the basis for the determination under § 1227(a)(4)(C)(i) is the "alien's past, current, or expected beliefs, statements, or associations, if such beliefs, statements, or associations would be lawful within the United States," section 1227(a)(4)(C)(ii) also requires the Secretary of State to "personally determine[] that the alien's [continued presence] would compromise a compelling United States foreign policy interest." *See* 8 U.S.C. § 1227(a)(4)(C)(ii) (applying the requirements of 8 U.S.C. § 1182(a)(3)(C)(ii) to determinations under § 1227(a)(4)).

In the memorandum, Secretary Rubio explained the reasoning for his decision:

> Pursuant to [8 U.S.C. § 1127(a)(4)(C)(i)&(ii)], I have determined that the activities and presence of this alien in the United States would have potentially serious adverse foreign policy consequences and would compromise a compelling U.S. foreign policy interest. These determinations are based on information provided by DHS/ICE/HSI that Mahdawi, through his leadership and involvement in disruptive protests at Columbia University, has engaged in anti-Semitic conduct through leading pro-Palestinian protests and calling for Israel's destruction. Mahdawi has been identified at those protests as having engaged in threatening rhetoric and intimidation of pro-Israeli bystanders. The activities and presence of Mahdawi in the United States undermines U.S. policy to combat anti-Semitism around the world and in the United States, in addition to efforts to protect Jewish students from harassment and violence in the United

> States. Under E.O. 14188, Additional Measures to Combat Anti-Semitism, it is the policy of the United States to combat antisemitism, using all available and appropriate legal tools to hold to account the perpetrators of unlawful anti-Semitic harassment and violence. Consistent with E.O. 14150, America First Policy Directive to the Secretary of State, the foreign policy of the United States champions core American interests and American citizens and condoning anti-Semitic conduct and disruptive protests in the United States would severely undermine that significant foreign policy objective. Moreover, protests of the type led by Mahdawi potentially undermine the peace process underway in the Middle East by reinforcing anti-Semitic sentiment in the regional [sic] and thereby threatening the U.S. foreign policy goal of peacefully resolving the Gaza conflict.

ECF No. 42-1, at 1-2.

This memorandum makes explicit that the Secretary of State deemed Mahdawi's presence in the United States to be contrary to a compelling foreign policy interest because of Mahdawi's involvement in disruptive protests at Columbia University decrying Israel's military activity in Gaza and otherwise supporting Palestinian rights. In other words, the Secretary of State judged that the foreign policy of the United States should disfavor Mahdawi, a noncitizen, for engaging in such activity.

### 2. Mahdawi's Arrest and Habeas Petition

Following this determination, on April 14, agents from the Department of Homeland Security took Mahdawi into custody in Colchester, Vermont, and served

him with a Notice to Appear ("NTA") before an immigration judge who would determine whether Mahdawi should be removed from the United States. ECF No. 54, at 4-5. Consistent with the Secretary of State's memorandum, the NTA explained to Mahdawi that he was removable based upon the Secretary of State's determination that his presence in the United States "would have potentially serious adverse foreign policy consequences for the United States," and would also "compromise a compelling U.S. foreign policy interest." ECF No. 19-2, at , 10, 13.

Also on April 14, Mahdawi filed a petition for a writ of habeas corpus in this Court. In his petition, Mahdawi accurately alleged that the Secretary of State had determined that his presence in the United States was contrary to the United States's foreign policy. ECF No. 1, at ¶ 5. The petition also described Mahdawi's leadership, along with Mahmoud Khalil,[1] of Columbia University's Palestinian Student Union, his participating in protests opposing Israel's military campaign in Gaza, and advocating for Palestinian rights. *Id.* at ¶¶ 23-24, 29. The petition also describes Mahdawi's appearance on 60 Minutes. *Id.* at ¶ 27.

The petition also accurately alleged, consistent with the Secretary of State's memorandum, that Mahdawi's arrest and the initiation of his removal proceedings

---

[1] Khalil's petition for a writ of habeas corpus is being litigated in the United States District Court for the District of New Jersey in case no. 2:25-cv-1963.

flowed from the January 29, 2025, Executive Order 14188, titled "Additional Measures to Combat Anti-Semitism." ECF No. 1, at ¶ 37.

Mahdawi asserts four claims for habeas relief. First, he claims, consistent with the Secretary of State's memorandum, that his adverse treatment is on account of his participation in protests at Columbia University. ECF No. 1, at ¶¶ 58-68. Second, he claims his adverse treatment is in violation of his rights under the Due Process clause of the Fifth Amendment because his detention bears no reasonable relation to any legitimate government purpose because he is neither a flight risk nor a danger to the community. *Id.* at ¶¶ 69-77. Third, he claims he is in removal proceedings because of the Executive Branch's policy of targeting noncitizens for removal on the basis of speech which advocates for Palestinian rights, and that such a policy is a violation of the Administrative Procedures Act. *Id.* at ¶¶ 78-81. Fourth, he claims the authority Congress gave the Secretary of State in 8 U.S.C. § 1227(a)(3)(C)(4) violates the non-delegation doctrine. ECF No. 1, at ¶¶ 82-85. And finally, the petition also sought Mahdawi's release pending the resolution of this habeas case. *Id.* at ¶¶ 86-90.

While Mahdawi's petition asserts four separate claims for habeas relief, as the Second Circuit noted, his "core argument is" that his detention violated the constitution. *Mahdawi v. Trump,* 136 F.4th 443, 452 (2d Cir. 2025).

### 3. Mahdawi's Bail Litigation

On April 22, Mahdawi filed a motion for release pending the resolution of his petition, which the government opposed. ECF Nos. 19, 42. Following a hearing on April 30, this Court granted Mahdawi's motion and ordered that he be released from immigration custody. In its ruling, the Court preliminarily rejected the government's arguments that it lacked jurisdiction pursuant to various provisions of the INA. *See* ECF No. 54, at 7-15. The Court also assessed whether Mahdawi was likely to prevail on his constitutional claims.

As to his First Amendment claim, the Court held that Mahdawi's speech and activity advocating for Palestinian rights and against the Israeli military campaign were protected under the First Amendment. *Id.* at 16-19. The Court also reviewed Executive Order 14188, and other public statements attributed to the administration, and concluded that Mahdawi had made a "substantial claim" that his adverse treatment was in retaliation for his First Amendment activity, while also noting that Mahdawi's request for bail was "not the time to rule on the merits of the evidence or the methods of inferring retaliatory motive." *Id.* at 19-20.

As to Mahdawi's due process claim, challenging whether Mahdawi's detention bears a "reasonable relation to the twin goals of ensuring a noncitizen's appearance during removal proceedings and preventing danger to the community," the Court held that Mahdawi may "succeed on his Fifth Amendment claim if he

6

demonstrates *either* that the government acted with a punitive purpose *or* that it lacks any legitimate reason to detain him." *Id.* at 22. Again, after reviewing public statements attributed to the administration, the Court ruled that Mahdawi had made a "substantial claim" under the due process clause. *Id.* at 21-23. This Court characterized Mahdawi as being one of a number of "[l]egal residents—not charged with crimes or misconduct—[who] are being arrested and threatened with deportation for stating their views on the political issues of the day. Our nation has seen times like this before, especially during the Red Scare and Palmer Raids of 1919-1920 that led to the deportation of hundreds of people suspected of anarchist or communist views." ECF No. 54, at 24.

### 4.  The Pending Appeal

The government appealed from this Court's April 22 decision to the United States Court of Appeals for the Second Circuit and moved for a stay pending appeal. On May 9 the Second Circuit denied that motion. *See Mahdawi v. Trump,* 136 F.4th 443 (2d Cir. 2025). In its ruling, the circuit court explained that Mahdawi's "core argument is that his free speech and due process rights are being violated, *now.*" *Id.* at 452. The Second Circuit also ruled that the government was not likely to succeed on the merits of its jurisdictional arguments. *Id.* at 449-54. In so ruling the Court observed that the arrest of Mahdawi to punish speech with which the government disagrees "would violate the Constitution."

Following the panel's decision denying Respondents' motion for a stay pending appeal, on May 18, the government petitioned the Court of Appeals for rehearing or rehearing en banc. That motion is pending before the circuit court. Meanwhile, the appeal, along with that of Rumeysa Ozturk, is subject to an expedited briefing schedule before the Second Circuit (the government's opening brief will be filed this week), and that Court has ordered that both appeals will be heard in tandem.

### 5.  The Pending Motion to Dismiss

The Court scheduled an initial hearing in this case for April 23, and on April 22, the government filed a prehearing memorandum which outlined, among other arguments, the government's position that this court lacks subject matter jurisdiction over Mahdawi's petition. *See* ECF No. 25. At the April 23 hearing the Court converted the government's submission into a motion to dismiss the petition. ECF No. 28. On June 4 Mahdawi filed his opposition to the motion to dismiss. Following that submission, the Court then stayed further briefing on the motion to dismiss "until the Court of Appeals concludes its en banc proceedings." ECF No. 76.

### 6.  Motion for Discovery

Mahdawi has now filed a "Motion for Limited Discovery." ECF No. 77. He seeks discovery relating to "the policy and decisions underlying his detention" to "adequately develop the facts supporting his claims." *Id.* at 1. He contends discovery

8

is needed "to prove [his] allegations" that his detention was the result of a policy "to punish noncitizens for their speech and expressive conduct." *Id.* at 4. He alleges "[a]dditional facts may provide further support to the allegations that Mr. Mahdawi was targeted specifically because of his protected speech, and that he was detained to punish him or to chill the speech of others." *Id.* at 5.

Mahdawi concedes, however, that "there is already public evidence" to support his claims. *Id.* at 6. He points specifically to the Executive Orders cited by the Secretary of State in his memorandum. *Id.* He also summarizes other statements attributable to the administration detailing an intent to apply the immigration laws to foreign students in the United States. *Id.* at 6-8.

Despite the wealth of publicly available information, Mahdawi wants more. He wants to depose the Secretary of State. *Id.* at 8. He wants additional internal Executive Branch correspondence. *Id.* He wants to know "the degree to which Respondents" relied on various sources of information. *Id.*

The Motion asserts that the requested discovery also "overlaps substantially with ongoing discovery in a case involving similar claims, meaning that the additional burden on the government in complying with Petitioner's discovery requests here will be slight." *Id.* at 10 (citing *Am. Assoc. of Univ. Professors. v. Rubio* ("*AAUP*"), No. 25-cv-10685 (D. Mass.).[2]

---

[2] Trial is currently scheduled in *AAUP* for July 7.

Mahdawi's requested discovery is extraordinary. It includes but is not limited to:

- Records (including all drafts) concerning:

    o the planning, execution, and implementation of the decision to take any adverse action against him;

    o Executive Orders 14161 and 14188;

    o The Secretary of State's determination that Mahdawi's presence would have potentially serious adverse foreign policy consequences and would compromise a compelling U.S. foreign policy interest;

- Communications between the Executive Branch and foreign governments;

- All records produced in *AAUP;*

- All records that the government intends to use to argue the Petition should not be granted;

- The deposition of the Secretary of State;

- The identities of all Executive Branch officials:

    o "responsible for" the treatment of Mahdawi and other similarly situated noncitizens;

- A list of "all factors, records, and information" considered by the Secretary of State relating to his foreign policy determinations;

- An explanation for the government's processes and methods underlying its implementation of foreign policy;

- Other operational details involving Mahdawi;

- A deposition pursuant to Fed. R. Civ. P. 30(b)(6) of one or more of the Department of Homeland Security's "officers, directors, or managing agents, or other persons who consent to testify" about many of the same topics listed above.

As explained below, none of the requested discovery is required to adjudicate Mahdawi's Petition, the requested discovery is egregiously overbroad, and if there is to be any discovery, it should wait until the interlocutory appeal and the government's motion to dismiss have been adjudicated. Accordingly, the motion should be denied.

## Legal Standard

The Supreme Court has made clear that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley,* 520 U.S. 899, 904 (1997). Rather, pursuant to Rule (6)(a)

of the Rules Governing § 2254 Cases in the United States District Courts,[3] leave of court is required and a petitioner must show good cause before a party is authorized to conduct discovery.

In assessing whether discovery would be appropriate in *Bracy,* the Supreme Court first identified the essential elements of the habeas claim asserted in that case. *Bracy*, 520 U.S. at 904. There, petitioner claimed his custody was the product of judicial corruption because the judge who had presided over his criminal trial and sentencing had later been convicted of taking bribes from defendants in other criminal cases. *Id.* at 900-01. The petitioner sought discovery to try to establish that his proceedings were corrupted by the judge's need to demonstrate pro-prosecution bias in cases where the judge did not receive a bribe from the defendant "to allay suspicion of his pattern of corruption and dishonesty." *Id.* at 902, 906. Petitioner also asserted that his criminal defense attorney may have been appointed with the understanding that the attorney "would camouflage" the judge's bribe negotiations

---

[3] These rules may be applied to habeas petitions brought pursuant to other provisions, including immigration-related habeas cases brought pursuant to 28 U.S.C. § 2241. *See, e.g., Khalil v. Joyce,* 2025 WL 849803, at *11 n.6 (S.D.N.Y. March 19, 2025); *Diakhate v. Casey,* 2024 WL 4882264, at *2 (W.D.N.Y. November 25, 2024); *Yosef v. Killian*, 646 F. Supp. 2d 499, 504 n.4 (S.D.N.Y. 2009); *see also* Rule 1(b) of Rules Governing § 2254 Cases ("The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule (1)(a)").

in other cases. *Id.* at 908. The Supreme Court emphasized that petitioner's claim was "only a theory" and "not supported by any solid evidence." *Id.*

Reiterating the rule it announced in *Harris v. Nelson,* 394 U.S. 286, 300 (1969), the Supreme Court explained that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Bracy,* 520 U.S. at 908-09.

On the other hand, discovery is not warranted where "the facts relevant to the limited questions currently facing the court . . . are not in dispute," *Khalil v. Joyce,* 2025 WL 849803, at *11 n.6 (S.D.N.Y. March 19, 2025), or where an immigration-related "petitioner has failed to demonstrate that discovery is necessary to the determination of the claims" in his petition. *Alexis v. Holmes,* 2004 WL 2202646, at *3 (W.D.N.Y. Sept. 29, 2004). In other words, if discovery is not needed to assess the requested habeas relief, there is no good cause. *Yosef v. Killian*, 646 F. Supp. 2d 499, 504 n.4 (S.D.N.Y. 2009).

## <u>Argument</u>

**1. The Court Should Stay Consideration of any Discovery Request Until Resolution of the Pending Appeal and Pending Motion to Dismiss.**

As noted above, the government has appealed to the United States Court of Appeals for the Second Circuit from this Court's order releasing Mahdawi on bail. The crux of the government's arguments on appeal are that this Court lacks jurisdiction over the petition pursuant to various provisions of the INA, and that this Court's decision improperly infringed on the Executive Branch's authority to make foreign policy determinations. While the initial panel denied the government's motion for a stay pending appeal, respondents have petitioned for rehearing and rehearing en banc from that preliminary ruling. Furthermore, the briefing on the underlying appeal is subject to an accelerated schedule, with respondents' brief due Friday, petitioner's brief due August 18, 2025, and the government's reply brief due September 2, 2025.

As this Court recognized, ECF No. 76, disposition of the appeal (or at least the en banc proceedings), should occur before the government's motion to dismiss the petition is finally adjudicated.

This Court must have jurisdiction to consider the underlying habeas claim for discovery to be warranted. *See Diakhate v. Casey,* 2024 WL 4882264, at *3 (W.D.N.Y. Nov. 25, 2024) (Declining to order discovery because "[a]t best, the

information appears potentially related to the legitimacy of [p]etitioner's removal order. But …. this Court has no jurisdiction over any claims attacking the legitimacy of [p]etitioner's removal order.") Accordingly, there should be no discovery until the motion to dismiss is resolved.[4]

Consistent with its approach to the pending motion to dismiss, the Court should deny Petitioner's discovery request until after the Second Circuit and, perhaps, the Supreme Court, have weighed in, and the motion to dismiss has been resolved.

### 2. Mahdawi Has Not Shown Good Cause for the Requested Discovery Because The Facts Relevant to the Question Before the Court Are Not in Dispute.

There are no disputed facts relating to the reason behind Mahdawi's detention: the Secretary of State determined that his presence in the United States is contrary to the country's foreign policy. That determination was based on Mahdawi's leadership and involvement in disruptive protests at Columbia University, and Mahdawi's use of rhetoric calling for Israel's destruction. The Secretary of State's

---

[4] Respondents seek dismissal not only of Petitioner's constitutional claims, but also his claims under the APA and the nondelegation doctrine. ECF No. 25 at 14-16. Mahdawi's Motion for Limited Discovery makes no showing that any of its requested discovery is pertinent to his non-constitutional claims. Indeed, any such discovery would be highly unusual. *See Almaklani v. Trump,* 444 F.Supp.3d 425 (E.D.N.Y. 2020) (denying motion for discovery in APA case that includes constitutional challenges to immigration policies).

memorandum made clear that the determination was informed by the policy choices articulated in Executive Orders 14188 and 14150 and the Executive's determination that "protests of the type led by Mahdawi potentially undermine the peace process underway in the Middle East by reinforcing anti-Semitic sentiment in the region[] and thereby threatening the U.S. foreign policy goal of peacefully resolving the Gaza conflict." ECF No. 42-1. Indeed, this Court observed that Mahdawi was arrested and subjected to removal proceedings "for stating [his] views on the political issues of the day." ECF No. 54, at 24. *See also* ECF No. 42-1, at 1 (Secretary of State Rubio invoking the authority for finding Mahdawi deportable based on "beliefs, statements, or associations that are otherwise lawful …").

Given this undisputed factual record, there is no justification for permitting Mahdawi to engage in any discovery, not to mention discovery seeking to canvas the Executive Branch for information concerning the development of the nation's foreign policy. As a matter of common sense, discovery is not warranted where the facts relevant to the question before the court are not in dispute. *See Khalil v. Joyce,* 2025 WL 849803, at *11 n.6 (S.D.N.Y. March 19, 2025). Here, Mahdawi has not explained how his requested discovery is necessary to the determination of his petition. As such, he has failed to establish good cause, and the motion for discovery should be denied. *See Alexis v. Holmes,* 2004 WL 2202646, at *3 (W.D.N.Y. Sept.

29, 2004) (denying discovery motion for failure to demonstrate discovery was necessary to the determination of the claims in the petition).

### 3. The Scope of the Requested Discovery Is Unreasonable.

Finally, the scope of Mahdawi's requested discovery is far beyond what is conceivably relevant to adjudicate *his* petition. For example, he seeks records concerning his citizenship interview, his arrest, the decision to try to transfer him out of Vermont once he was in custody, as well as airline records relating to his anticipated travel. He also seeks records relating to "other individuals" as to whom 8 U.S.C. § 1227(a)(4)(C) has been invoked. Patently *none* of that material has any bearing on whether *Mahdawi's* detention violated the First or Fifth amendments.

He also seeks "all documents and communications" relating to Executive Orders 14161 and 14188. Again, he does not explain how those deliberative records would affect the analysis of whether his detention was constitutional. He also seeks records concerning the Secretary of State's memorandum (ECF No. 42-1) declaring that Mahdawi's presence would have potentially serious adverse policy consequences and would compromise a compelling U.S. foreign policy interest.

As illustrated above, that memorandum spells out the reasons for the determination. Mahdawi nonetheless wants to see "all information considered" by the Secretary of State in making his determination. Mahdawi also wants to take the Secretary of State's deposition. It is clear Mahdawi wants to litigate more than

whether *his* detention comports with the constitution. Rather he wants to involve himself, and the Court, in the very innards of how the State Department conducts and assesses the nation's foreign policy.

But the Supreme Court has held that the conduct of the nation's foreign policy is not fodder for discovery in immigration-related litigation. In *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487-92 (1999) ("*AADC*"), petitioners who had been targeted for removal because of their First Amendment associations sought habeas relief, and wanted to develop a record to support their constitutional claim. The Court explained that "[t]he Executive should not have to disclose its 'real' reasons for deeming nationals of a particular country a special threat—or indeed for simply wishing to antagonize a particular foreign country by focusing on that country's nationals—and even if it did disclose them a court would be ill equipped to determine their authenticity and utterly unable to assess their adequacy." 525 U.S. at 491.

Especially where, as here, the record is sufficient for the petition to be adjudicated, permitting the discovery of the sort Mahdawi desires is pure cost creation, and runs afoul of Rule 1 of the Rules of Procedure, admonishing that the Rules of Civil Procedure, including the rules relating to discovery, "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ.

P. 1 (made applicable to habeas cases by Fed. R. Civ. P. 81 and Rule 12 of the Rules governing cases under 28 U.S.C. § 2241).

Finally, it would be categorically improper to order the deposition of the Secretary of State. A judicial order compelling the testimony of a Cabinet Secretary raises significant separation-of-powers concerns and is therefore permissible only in the rarest of circumstances. This is not one of them. First, the Supreme Court explained in *AADC* that the Executive should not be required to explain in immigration habeas litigation the underpinnings of its foreign policy. Second, there is nothing the Secretary of State could say in a deposition to alter the record before the Court, and his memorandum makes plain the reasons behind Mahdawi's detention. Third, the overwhelming weight of authority establishes that such an order would be improper. *See, e.g., In re United States*, 624 F.3d 1368, 1372 (11th Cir. 2010) (issuing a writ of mandamus to preclude testimony of EPA Administrator); *In re McCarthy,* 636 F. App'x 142, 144 (4th Cir. 2015) (issuing writ of mandamus to preclude deposition of EPA Administrator); *In re United States,* 542 F. App'x 944 (Fed. Cir. 2013) (issuing writ of mandamus to preclude deposition of the Chairman of the Federal Reserve Board); *In re Cheney,* 544 F.3d 311, 314 (D.C. Cir. 2008) (issuing writ of mandamus to preclude deposition of the Vice President's chief of staff); *In re United States,* 197 F.3d 310, 314 (8th Cir. 1999) (issuing writ of mandamus to preclude testimony of Attorney General and Deputy Attorney

19

General); *In re FDIC,* 58 F.3d 1055, 1060 (5th Cir. 1995) (issuing writ of mandamus to preclude testimony of three FDIC Board members); *In re United States,* 985 F.2d 510, 512 (11th Cir. 1993) (issuing writ of mandamus to preclude testimony of the Commissioner of the FDA); *United States Board of Parole v. Merhige,* 487 F.2d 25, 29 (4th Cir. 1973) (issuing writ of mandamus to preclude deposition of members of the Board of Parole).

Subjecting a cabinet official to a deposition also runs afoul of the "apex doctrine." As this case demonstrates, by the nature of their position, high-ranking officials are "particularly vulnerable to abusive, harassing depositions." *Brown v. Branch Banking & Trust Co.,* 2014 WL 235455, at *2 (S.D. Fla. Jan. 22, 2014). Thus, Courts have developed the "apex doctrine." This doctrine serves several purposes: "(1) to protect the integrity and independence of the government's decision-making processes; (2) to permit high-ranking government officials to perform their official tasks without disruption or diversion; and (3) to limit indiscriminate depositions that would discourage individuals from accepting positions as public servants." *United States v. Newman,* 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (citations omitted); *see also Judicial Watch v. United States Dep't of State,* 2016 WL 10770466, at *3 n.7 (D.D.C. Aug. 19, 2016) ("The three primary rationales for the apex doctrine are: (1) respecting the integrity of the administrative process; (2) allowing government officials to perform their tasks without disruption;

and (3) to not discourage individuals from public service."); *Harpeti v. CBS Television Stations, Inc.*, 2021 WL 3932424, at *2 (S.D.N.Y. September 2, 2021) (explaining the apex doctrine supplies a "layer of protection for senior corporate executives subject to depositions" and that such high-level persons are "safeguarded from depositions" unless the executive has unique evidence and other witnesses are incapable of providing testimony." (citations omitted)).

## CONCLUSION

For the above reasons, the Court should deny the motion for discovery.

Respectfully submitted,


Dated: June 25, 2025        By:    /s/ *Michael P. Drescher*
                                   Michael P. Drescher
                                   Assistant United States Attorney
                                   District of Vermont