# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

MOHSEN MAHDAWI,

                *Petitioner*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States; PATRICIA HYDE, in her official capacity as Acting Boston Field Office Director; Vermont Sub-Office Director of Immigration and Customs Enforcement; TODD M. LYONS, in his official capacity as Acting Director for U.S. Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; MARCO RUBIO, in his official capacity as Secretary of State; and PAMELA BONDI, in her official capacity as Attorney General of the United States,

                *Respondents*.

Case No. 2:25-cv-00389

**REPLY TO RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR LIMITED DISCOVERY**

**INTRODUCTION**

Petitioner Mohsen Mahdawi filed a motion for limited discovery, seeking information from Respondents relevant to his unlawful detention pursuant to a policy to punish noncitizens for their speech and expressive conduct (the "Policy"). Mr. Mahdawi has shown good cause for discovery because he has made specific allegations that provide reason to believe that discovery on the Policy (which was enacted through public statements, executive orders, the Rubio memorandum, communications with third parties, and the arrests and detentions of other noncitizens) and on Mr. Mahdawi's own arrest, detention, and attempted removal to Louisiana, would support his habeas petition. Respondents oppose discovery, primarily on the ground that the Petition can be resolved based on their characterization of Petitioner's claims. This argument does not find any support in the case law and is insufficient to rebut Petitioner's showing of good cause. The Court should grant the motion for limited discovery.

**ARGUMENT**

In his motion for limited discovery, Petitioner explained that he met the standard for discovery articulated by the Supreme Court and followed in this Circuit. In opposition, Respondents ignore the applicable standard and oppose discovery because they believe the current record is sufficient for the petition to be adjudicated. Because Mr. Mahdawi has established that discovery will support his habeas petition, the Court should grant Petitioner's motion for limited discovery.

I.   **THERE ARE SIGNIFICANT FACTS IN DISPUTE.**

Respondents do not contest that Petitioner has made specific allegations that provide reason to believe the requested discovery will support the Petition. Instead, Respondents argue that discovery is unnecessary because there are no disputed facts. (Doc. No. 78 at 15–17.) This is plainly incorrect and fails to grapple with the most legally significant allegations in the Petition. For example, Mr. Mahdawi has alleged that the government adopted a Policy to punish noncitizens for their speech and

1

expressive conduct, and that the government specifically targeted and detained Mr. Mahdawi on the basis of protected speech for which he cannot be detained. Respondents do not concede these allegations; indeed, in other litigation, Respondents have taken the position that no such Policy exists. *See* Defs' Opp. to Pl's Mot. for Prelim. Injunction at 12, *Am. Assoc. of Univ. Profs. v. Rubio*, No. 25-cv-10685 (D. Mass. Apr. 14, 2025) (Doc. No. 65) (denying that statements by Respondents and other government sources establish the existence of the challenged Policy). Furthermore, Mr. Mahdawi "has raised serious arguments" that the government retaliated against him, that the speech at issue was protected, that he was detained for a punitive purpose, and that he was detained to deter other speech. (*See* Doc. No. 54 at 18–22.) Surely these issues are disputed by the government, and their resolution would be aided significantly by discovery.

Respondents cite two cases denying motions for discovery where there were no facts in dispute. (Doc. No. 78 at 13, 16.) These are of no help in this case, where significant facts *are* in dispute.[1]

Respondents do not contest that Petitioner has made the requisite showing under *Bracy*—specific allegations that provide reason to believe the requested discovery will support his petition. *See Bracy v. Gramley,* 520 U.S. 899, 908-09 (1997); *Drake v. Portuondo*, 321 F.3d 338, 346 (2d Cir. 2003); *Pizzuti v. United States*, 809 F. Supp. 2d 164, 175–76 (S.D.N.Y. 2011). Since Petitioner has met this requirement, "it is the duty of the court to provide" for adequate discovery. *Bracy*, 520 U.S.

---

[1] In *Khalil v. Joyce,* 2025 WL 849803, at *11 n.6 (S.D.N.Y. March 19, 2025), the court denied discovery as to the highly limited jurisdictional question of where a habeas petitioner physically was when filing his petition because that fact was not in dispute at all, and that undisputed fact provided grounds for the transfer of the petition to a different district court. And in *Alexi v. Holmes,* 2004 WL 2202646, at *3 (W.D.N.Y. Sept. 29, 2004), the court denied discovery as futile while dismissing a habeas petition challenging a final order of removal, as to which record development had already taken place. Neither case, which treated discovery as an afterthought, cites any authority at all for the proposition that discovery motions must be denied when no facts are in dispute, and they do not propose reworking the *Bracy* standard. Finally, Respondents also cite *Yosef v. Killian*, 646 F. Supp. 2d 499, 504 n.4 (S.D.N.Y. 2009), in which the Court rejected a request for discovery as moot because the government had already provided all relevant documents. *Id.*

at 908–09 (cleaned up); *Drake,* 321 F.3d at 345–46.

### II. THE SCOPE OF DISCOVERY IS TAILORED TO PETITIONER'S SPECIFIC ALLEGATIONS

Mr. Mahdawi's Petition alleges that the government adopted a Policy to punish noncitizens for their speech and expressive conduct, and that the government specifically targeted and detained Mr. Mahdawi on the basis of activities protected by the First Amendment. The Petition further alleges that this Policy was enacted through public statements, executive orders, the Rubio memorandum, communications with third parties, the arrests and detentions of other noncitizens, and Mr. Mahdawi's arrest, detention, and attempted removal to Louisiana. (Doc. No. 1 ¶¶ 32–51.) This is the core of Mr. Mahdawi's constitutional claims.

Respondents argue that discovery on these items is "far beyond what is conceivably relevant to adjudicate *his* petition." (Doc. No. 78 at 17.) This is wrong. Mr. Mahdawi has provided reason to believe that records concerning his citizenship interview, arrest, and attempt to quickly transfer him out of Vermont will demonstrate that the government acted with a punitive purpose in detaining *him*. Mr. Mahdawi has provided reason to believe that records regarding executive orders, the Rubio Memorandum, and communications with third parties will demonstrate the government acted in retaliation for *his* protected speech and intended *his* detention to chill the speech of others.

More broadly, Respondents suggest that Petitioner must explain how each document disclosed in discovery "would affect the analysis of whether his detention was constitutional." (Doc. No. 78 at 17.) Such a showing is not required, and in fact inverts the discovery process. Only *after* discovery can we determine how the disclosures affect the analysis of whether Mr. Mahdawi's detention was constitutional. Regardless, if documents concerning the executive orders and the Rubio Memorandum show that Mr. Mahdawi was specifically targeted in retaliation for his speech, that will obviously support the Petition and "affect the analysis of whether his detention was constitutional." *Id*.

3

### A.   THE DISCOVERY REQUESTS DO NOT IMPROPERLY SEEK INFORMATION ABOUT FOREIGN POLICY.

Respondents argue that Mr. Mahdawi's discovery requests are overbroad because they would dig "in[to] the very innards of how the State Department conducts and assesses the nation's foreign policy." (Doc. No. 78 at 18.) But that is not so. Mr. Mahdawi seeks documents relevant to the decision to detain him because, as he has specifically alleged, these decisions and actions serve improper motives. The discovery requests do not seek to determine whether a given foreign policy rationale is sufficient or better than another, but whether the highly relevant decisions made and actions taken provide support for Mr. Mahdawi's claims of unconstitutional retaliation. Respondents' public statements, *see, e.g.*, Doc. No. 77 at 6–7, suggest that Mr. Mahdawi was targeted by members of the administration and third parties, and was punished for his protected speech to chill the speech of others; the foreign policy ground asserted in the Rubio Memorandum was just the means available to the government. Regardless, the motives of Secretary of State Marco Rubio to issue the Rubio memorandum are directly relevant to Mr. Mahdawi's claims that he was unlawfully targeted and detained in violation of the First Amendment and the due process clause of the Fifth Amendment. Shrouding them under a cloak of foreign policy cannot change that.[2]

### B.   EXTRAORDINARY CIRCUMSTANCES JUSTIFY A DEPOSITION OF SECRETARY OF STATE MARCO RUBIO.

The apex doctrine requires that "a party attempting to depose a high-ranking government official must demonstrate 'extraordinary circumstances' requiring such a deposition." *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (citing *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985)). For example, "exceptional circumstances" may be found

---

[2] The government argues that *Reno v. American-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 487-92 (1999), bars discovery. But the cited portion of *AADC* addressed whether the plaintiffs' claim there was barred by the Immigration and Nationality Act, 8 U.S.C. § 1252(g)—and this Court has already preliminarily held that section 1252(g) does not bar Mr. Mahdawi's claims. *See* Doc. 54 at 8-12 (addressing *AADC*).

if the high-ranking official has unique first hand knowledge. *Judicial Watch v. United States Dep't of State,* No. 13-1363, 2016 U.S. Dist. LEXIS 200935, 2016 WL 10770466, at *7 (D.D.C. Aug. 19, 2016).

The nature of the government's outrageous conduct in this case, and the context of this case with others like it—where the government is targeting and detaining noncitizens for their political speech—present extraordinary circumstances. *See, e.g.*, Doc. No. 54 at 24–25. Furthermore, as the government continues to stress, Marco Rubio "personally determined" that Mr. Mahdawi should be targeted. Respondents' Appeal Memorandum at 5, 27, *Mahdawi v. Trump*, No. 25-1113, Doc. No. 100.1 (2d Cir. 2025). In such extraordinary circumstances, Petitioner should be allowed to depose Marco Rubio about his personal decisions regarding Mr. Mahdawi's lawful speech. Respondents cite a litany of cases denying depositions of high-ranking executives and government officials, but all are distinguishable because of the absence of extraordinary circumstances or lack of personal knowledge by the executive or official. *See In re United States*, 624 F.3d 1368, 1369 (11th Cir. 2010) (record established no "special need" for the testimony of the Administrator, and that the Assistant Administrator was an adequate substitute); *In re McCarthy,* 636 F. App'x 142, 144 (4th Cir. 2015) (Plaintiffs failed to demonstrate extraordinary circumstances or a need for the deposition of the Administrator as opposed to a 30(b)(6) deposition); *In re United States,* 542 F. App'x 944, 949 (Fed. Cir. 2013) (Plaintiff failed to establish extraordinary circumstances and the record suggested "all the appearance, and vices, of a fishing expedition rather than an effort to establish legally material facts"); *In re Cheney,* 544 F.3d 311, 314 (D.C. Cir. 2008) (Plaintiff failed to show any need for the deposition of the Vice President's Chief of Staff, who "has no apparent involvement in this litigation."); *In re United States,* 197 F.3d 310, 314 (8th Cir. 1999) (failed to establish extraordinary circumstances because the information could be obtained from another source); *In re FDIC,* 58 F.3d 1055, 1062 (5th Cir. 1995) (failed to show extraordinary circumstances absent "a strong showing of bad faith or

5

improper behavior"); *In re United States,* 985 F.2d 510, 512 (11th Cir. 1993) (no extraordinary circumstances or special need because testimony was available from other witnesses and the official was not in office during the relevant period); *United States Board of Parole v. Merhige,* 487 F.2d 25, 29 (4th Cir. 1973) (finding no extraordinary circumstances); *Brown v. Branch Banking & Trust Co.,* 2014 WL 235455, at *11 (S.D. Fla. Jan. 22, 2014) (plaintiffs failed to show that the executive had "some unique personal knowledge" and that no less intrusive means exist); *United States v. Newman,* 531 F. Supp. 3d 181, 189–91 (D.D.C. 2021) (denying depositions of senior officials where the basis of the deposition was irrelevant or because the information could be obtained elsewhere); *Harapeti v. CBS Television Stations, Inc.*, 2021 WL 3932424, at *2 (S.D.N.Y. Sept. 2, 2021) (barring deposition under the apex doctrine because of a lack of evidence of "personal knowledge"). Unlike all of these examples, this case *does* present extraordinary circumstances and substantial evidence of improper behavior. And only Secretary of State Marco Rubio can testify about his "personal[]" determinations. *See Judicial Watch,* 2016 WL 10770466, at *5-6 (D.D.C. Aug. 19, 2016) (ordering deposition of Secretary of State because "her closest aides at the State Department . . . did not have personal knowledge").

Respondents also assert that "there is nothing the Secretary of State could say in a deposition to alter the record before the Court." (Doc. No. 78 at 19.) But that is plainly wrong. Secretary of State Marco Rubio could say in a deposition that he received a list of noncitizens to target for their protected speech, that the decision to use Section 1227(a)(4)(C)(i) came after the decision to retaliate against Mr. Mahdawi and others, or that he coordinated with third parties to punish Mr Mahdawi and to chill disfavored political speech. Contrary to the Respondents' bald assertion, Marco Rubio is better positioned, even uniquely positioned, to provide evidence relevant to Mr. Mahdawi's claims than any other person in the federal government.

6

### III. THIS COURT HAS ALREADY DETERMINED THAT THE COURT HAS JURISDICTION OVER THE PETITION.

In its Order granting Petitioner's motion under *Mapp v. Reno*, the Court evaluated Respondents' jurisdictional arguments, and made a preliminary determination that it had jurisdiction. (Dkt. No. 54 at 7–15.) On Respondents' application for a stay pending appeal, the Second Circuit evaluated Respondents' jurisdictional arguments, and determined that Respondents were unlikely to prevail. *Mahdawi v. Trump,* No. 25-1113, Doc. No 86.1 (2d Cir. May 9, 2025). Respondents repeat those arguments here, and ask the Court to delay discovery indefinitely. (Doc. No. 78 at 14–15.)

This is a dilatory tactic that the Court should not entertain. Unlike Respondents' motion to dismiss, the motion for discovery is not dispositive, and the interests of justice and due process are furthered by permitting Petitioner to establish facts going to the heart of his First and Fifth Amendment claims.

### CONCLUSION

For the foregoing reasons, Mr. Mahdawi has made the requisite showing of good cause to justify discovery and his motion should therefore be granted.

Dated: July 3, 2025
       S. Woodbury, Vermont

Respectfully submitted,

_____
Andrew B. Delaney
**MARTIN DELANEY & RICCI LAW GROUP**
100 North Main Street
Barre, Vermont 05641
andrew@mdrvt.com
P: 802-479-0568

/s/ Lia Ernst
Monica H. Allard
Hillary A. Rich
**ACLU FOUNDATION OF VERMONT**
P.O. Box 277
Montpelier, VT 05601
P: (802) 223-6304
lernst@acluvt.org

Nathan Freed Wessler*
Brett Max Kaufman*
Brian Hauss*
Esha Bhandari*
Noor Zafar*
Sidra Mahfooz*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10004
P: (212) 549-2500
nwessler@aclu.org

**CLEAR P**ROJECT
**M**AIN **S**TREET **L**EGAL **S**ERVICES**, I**NC.
Ramzi Kassem***
Naz Ahmad***
Mudassar Hayat Toppa***
Shezza Abboushi Dallal*
CUNY School of Law
2 Court Square, 5th Floor
Long Island City, NY 11101
Tel.: (718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu
shezza.dallal@law.cuny.edu

Luna Droubi*
Matthew Melewski*
**BELDOCK LEVINE & HOFFMAN LLP**
99 Park Avenue, PH/26th Floor
New York, New York 10016
P: (212) 277-5875
F: (212) 277-5880
ldroubi@blhny.com
mmelewski@blhny.com

Cyrus D. Mehta*
David A. Isaacson
**CYRUS D. MEHTA & PARTNERS PLLC**
One Battery Park Plaza, 9th Floor
New York, New York 10004
P: 212-425-0555
F: 212-425-3282

*Attorneys for Petitioner*

*Pro Hac Vice

***Pro Hac Vice application forthcoming

8