UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| MOHSEN MAHDAWI,<br><br>                              Petitioner,<br><br>      v.<br><br>DONALD J. TRUMP, et al.,<br><br>                              Respondents. | No. 2:25-cv-389 |

**RESPONDENTS' RESPONSE TO MOTION FOR FURTHER ORDER MODIFYING THE COURT'S APRIL 30, 2025 OPINION AND ORDER**

With two exceptions,[1] the Court should deny Petitioner Mohsen Mahdawi's motion seeking to modify his release conditions, ECF No. 79. Pursuant to the Court's April 30, 2025 Order, ECF No. 54, Mahdawi is presently required to reside in Vermont, may travel to New York for education and attorney visits or as otherwise ordered by this Court, and is required to attend hearings in this habeas case. He now seeks permission to travel freely all over the country.

The motion should be denied for the following reasons.[2]

First, Mahdawi's request that he be permitted to travel anywhere in the United States is inconsistent with the conditions of release granted for "similarly-situated petitioners," Mot. at 3,

---

[1] So long as Mahdawi has been ordered released, his conditions should require that he attend hearings in his case in Immigration Court and permit interstate travel for that purpose. Additionally, Respondents acknowledge that residents of the White River Junction area regularly attend medical appointments and shop for personal items and groceries in Lebanon and Hanover, New Hampshire, and do not object to a modification of conditions to permit travel to those locations for those purposes.

[2] The Court's April 30 order rejected the government's arguments that the Court lacked habeas jurisdiction over this matter; *Mapp v. Reno* did not authorize release; and that release would constitute unwarranted judicial involvement in the nation's foreign policy. Respondents continue to object to Mahdawi's release for the reasons previously stated.

1

whose presence in the United States – like Mahdawi's – was determined by the Secretary of State to be contrary to the Nation's foreign policy due to his leadership and involvement in disruptive, antisemitic, and pro-Palestinian protests at Columbia University. Specifically, in Mahmoud Khalil's habeas case, on June 20, 2025, the United States District Court for the District of New Jersey imposed the following conditions, among others:

- "Petitioner's travel shall be restricted to New York and Michigan, as well as New Jersey and Louisiana for court appearances and attorney visits only, and Washington D.C. for lobbying/legislative purposes only";
- "Petitioner may not travel beyond the restrictions noted in this Order";
- "Petitioner shall attend all court hearings, absent an order to the contrary issued by the court convening the hearing"; and
- "Petitioner shall provide his most current address to the Department of Homeland Security within 48 hours of his release".

*Khalil v. Joyce,* No. 2:25-cv-1963-MEF-MAH, D.NJ., ECF No. 317. Mahdawi's suggestion that he is similarly situated to Ms. Ozturk, Mot. at 3, is wrong. Unlike Mahdawi, the Secretary of State has not declared that Ozturk's presence in the United States is contrary to the Nation's foreign policy.

Furthermore, while Khalil is allowed to travel to Washington D.C. "for lobbying/legislative purposes only," that condition permits travel to Washington solely to interact with Congress. Mahdawi, on the other hand, seeks to travel to Washington not only to "testify in front of Congress," but also to engage in other, unspecified, "advocacy efforts he hopes to involve himself with[.]" Mot. at 6. In light of the Secretary of State's determination that his presence is contrary to the nation's foreign policy, Respondents object to permitting Mahdawi to travel to the

Nation's capital. But if the Court is inclined to otherwise permit Mahdawi to travel to Waschington D.C., it should be for the same limited "lobbying/legislative purpose only."

Second, Mahdawi suggests he is entitled to restoration of the "status quo ante preceding" his detention. Mot. at 3. That is incorrect: Mahdawi continues to be subject to removal proceedings and, therefore, the government has a substantial interest in knowing his location. That interest is heightened because, as noted previously, the basis for Mahdawi's removability is the Secretary of State's determination pursuant to 8 U.S.C. § 1227(a)(4)(C) that Mahdawi's presence or activities in the United States will have potentially serious adverse foreign policy consequences for the United States and will compromise a compelling foreign policy interest. *See* ECF No. 42-1. Allowing Mahdawi to wander free anywhere in the United States is incompatible with that foreign policy judgment.

Third, and in light of the Secretary of State's determination that Mahdawi's presence in the United States would be contrary to the foreign policy interests of the United States, allowing Mahdawi to roam the country without restriction would be contrary to the public interest.

Moreover, it again bears emphasis that Petitioner is not immune from arrest and prosecution should he violate any local, state, or federal law, including laws relating to the unlawful possession of firearms as well as those requiring that he maintain and carry alien registration documents, and updating immigration officials when there is a change in residence. *See, e.g.,* 18 U.S.C. § 922(g), 8 U.S.C. §§ 1302-1306.

Finally, as noted in footnote 1, above, without conceding the propriety of his release, respondents agree that Mahdawi should be ordered to attend all immigration court hearings, unless his presence has been excused by the immigration judge, and that he should be permitted to shop and attend medical appointments in Hanover and Lebanon, New Hampshire.

Respectfully submitted,

Dated: July 14, 2025                By:    */s/ Michael P. Drescher*
                                           Michael P. Drescher
                                           Assistant United States Attorney
                                           District of Vermont